# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-2628

_____

EFCO Corp., formerly known as,    *
Economy Forms Corporation,    *
    *
          Appellee,    *
    *
      v.    *
    *
Symons Corporation,    *
    *
          Appellant.    *

Appeals from the United States
District Court for the
Southern District of Iowa.

_____

No. 99-2629

_____

EFCO Corp., formerly known as,    *
Economy Forms Corporation,    *
    *
          Appellant,    *
    *
      v.    *
    *
Symons Corporation,    *
    *
          Appellee.    *

Submitted:  March 13, 2000

Filed: July 18, 2000

Before McMILLIAN and HEANEY, Circuit Judges, and BOGUE[1], District Judge.

HEANEY, Circuit Judge.

EFCO Corp. (EFCO), brought suit against Symons Corporation (Symons) claiming that Symons:  (1) engaged in false advertising in violation of the Lanham Act; (2) misappropriated EFCO's trade secrets in violation of the Iowa Uniform Trade Secrets Act (IUTSA);  (3) induced James D. Phillips, a former high-level EFCO employee, to breach his fiduciary duty to EFCO; and (4) interfered with EFCO's prospective business relations.  Symons counterclaimed against EFCO for libel and for false advertising in violation of the Lanham Act.

Following the presentation of evidence, the district court charged the jury with deciding damages separately for each cause of action.  The jury returned verdicts in favor of EFCO on its claims and in favor of Symons on its claims.  The district court reversed the jury's verdict on EFCO's claim of interference with prospective business relations, modified the remaining jury awards to account for duplication, and entered

[1]The Honorable Andrew W. Bogue, United States District Judge, for the District of South Dakota, sitting by designation.

2

judgment for EFCO in the amount of $14.1 million and in favor of Symons in the amount of $50,000.[2]

Symons appeals, arguing that the district court erred in admitting testimony from EFCO's expert witness, and that EFCO's evidence was insufficient to support any of its jury verdicts. EFCO cross-appeals, arguing that it is entitled to prejudgment interest on its judgment and attorneys' fees for the prosecution of its trade-secrets claim. EFCO further contends that the district court miscalculated the final damages award and erred in granting Symons judgment as a matter of law on EFCO's claim of interference with prospective business relations. We affirm the district court in all respects.[3]

## FACTS

EFCO and Symons are competitors in the concrete forming system trade. Among the products both companies make are metal panels that can be joined together to create large modular systems. These systems act as casts for concrete, which is poured into the metal systems and allowed to set. Once the concrete hardens, the metal forms are removed. The panels are reusable, and are manufactured in various sizes to accommodate different applications, and feature a universal bolt pattern so as to work interchangeably.

---

[2]EFCO does not appeal the judgment entered against it by the district court.

[3]We address each party's contentions in detail, with the exception of Symons' challenge to the sufficiency of the evidence on EFCO's claim of inducement of breach of fiduciary duty. Symons mentions this claim only in a footnote, asking us to reverse the jury verdict for the same reasons it offers in support of its misappropriation of trade secrets argument. Because we reject Symons' misappropriation of trade secrets argument, its argument on inducement of breach of fiduciary duty fails as well. Symons' improper presentation of the issue serves as an independent basis for our rejection of its claim. See Falco Lime, Inc. v. Tide Towing Co., 29 F.3d 362, 367 n.7 (8th Cir. 1994).

3

James D. Phillips worked at EFCO from 1963 to 1992. During that time he was instrumental to EFCO's engineering operations, and was intimately involved in the development of one of EFCO's new products, the Super Stud. The Super Stud is a metal beam designed to support the concrete forming system by acting as a buttress. When Phillips left EFCO in 1992, he entered into a severance agreement that prohibited him from disclosing confidential information or competing with EFCO.

Shortly after Phillips left EFCO, Symons contacted him. He sent Symons a copy of his severance agreement. Symons then offered Phillips a position as a consultant, responsible for helping to upgrade Symons' Korean manufacturing plant. Because Phillips was prohibited from working with Symons as a result of his severance agreement, Symons devised a clandestine payment scheme, whereby Phillips was paid by a third party, who Symons then reimbursed. Once Phillips' noncompete clause lapsed, Symons hired him as an employee.

EFCO contends that Symons requested and received confidential information from Phillips, including: (1) EFCO's method of welding its corner-bearing block on its forming systems; (2) the design of EFCO's semi-automatic jig, a mechanism that allows EFCO to manufacture forming panels of the same size and quality so that the panels fit together; (3) the design of EFCO's column form jig, an instrument that can bend metal uniformly into round cylinders so as to allow concrete to be cast as round columns; (4) the design and development of the Super Stud, an instrument EFCO claims required over five years of research and development; and (5) its marketing and cost information, including pricing information on all products and non-engineering design details on the Super Stud.

During the relevant period, Symons advertised its products as compatible and interchangeable with EFCO's products through several media. Symons further advertised its products as stronger and better than its competitor's products. Some of these advertising claims were bald assertions; others were purportedly the result of in-

4

house and independent testing. According to EFCO, Symons' products were not stronger than its products, nor could the two be safely commingled.

## DISCUSSION

I.    SYMONS' APPEAL.

Symons appeals the district court's denial of its motions for a new trial and for judgment as a matter of law. Its arguments are focused primarily on the sufficiency of EFCO's evidence. Symons also contends that the district court abused its function as gatekeeper in allowing Dr. John Hancock to testify as an expert witness.

A.    Standard of Review.

We review de novo the district court's denial of a motion for judgment as a matter of law. See Denesha v. Farmer's Ins. Exch., 161 F.3d 491, 497 (8th Cir. 1998). We consider the evidence in the light most favorable to the non-moving party, and give the non-moving party the benefit of all inferences. See id. We will not reverse a jury verdict for insufficient evidence unless no reasonable juror could have returned a verdict for the non-moving party. See id.

We review the denial of a motion for a new trial for an abuse of discretion. See id. A motion for new trial based on sufficiency of the evidence should be granted only if the jury's verdict was against the great weight of the evidence, so as to constitute a miscarriage of justice. See id. When a district court, employing the proper legal standards, denies a new trial motion based on sufficiency of the evidence, the district court's ruling is "virtually unassailable." Pulla v. Amoco Oil Co., 72 F.3d 648, 656 (8th Cir. 1995). Where a motion for new trial is based on rulings regarding the admissibility of evidence, the district court will not be reversed "absent a clear and prejudicial abuse

5

of discretion." First Sec. Bank v. Union Pac. R.R. Co., 152 F.3d 877, 879 (8th Cir. 1998).

B.     Admissibility of Dr. John Hancock's Testimony.

Symons claims that the district court improperly admitted EFCO's damages evidence, presented through its expert witness Dr. John Hancock. Before admitting expert testimony, the district court must determine that the proffered testimony is both relevant and reliable. See Fed. R. Evid. 702; Kumho Tire Co. v. Carmichael, 526 U.S. 137, 147 (1999). In this so-called gatekeeper role, the district court is afforded wide latitude in making its reliability and relevance determinations. See Kumho, 526 U.S. at 152. Accordingly, we review for an abuse of discretion. See id. at 141-42 (1999).

Having reviewed the record, we are satisfied that the district court did not abuse its discretion in allowing Hancock to testify. The district court conducted a two-day hearing in accordance with Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), to determine whether Hancock's testimony was sufficiently reliable. It noted that Hancock possessed adequate credentials to render an opinion, evidenced by his doctorate degree in economics and his extensive experience in forensic economics. The district court further noted that Symons' proffered expert, Dr. Peter Orazem, disputed the methodology used by Hancock. Recognizing the parties' conflicting theories, the district court allowed both Hancock and Orazem to testify regarding damages, leaving to the jury the ultimate decision as to which theory was the sounder.

Hancock based his damage calculations on information he had received from EFCO and Symons regarding their revenue and on other information obtained from EFCO's Chief Financial Officer and United States Sales Manager. He focused on the panel leasing market, where EFCO and Symons were the only major competitors. From the leasing market shifts, Hancock extrapolated EFCO's past and future damages.

6

Hancock's expert testimony was not so unreliable as to be wholly excluded from jury consideration. Although Symons questioned his approach, its criticisms were grist for the jury.

C.     <u>False Advertising.</u>

Symons attacks the jury's verdict on EFCO's false advertising claim, contending there was insufficient evidence that its assertions were false, or that its assertions caused EFCO any harm. Symons further argues that the district court misinstructed the jury on this claim.

1.     The Jury Instruction and Evidence of Symons' False Assertions.

With regard to comparative advertising, we have recognized two types of claims which, if false, may give rise to a cause of action: (1) bald assertions (e.g., "My product is better than yours"); and (2) assertions supported by testing (e.g., "Tests prove my product is better than yours"). See <u>United Indus. Corp. v. Clorox Co.</u>, 140 F.3d 1175, 1181-82 (8th Cir. 1998). A plaintiff must show that a bald assertion is actually false, whereas a "tests prove" assertion is considered false if not substantiated by reliable testing. See <u>id.</u>

Symons claims the district court committed reversible error by not instructing the jury on what would constitute a false "tests prove" advertisement. We disagree. Although some of Symons' representations were purportedly based on product testing, many of Symons' representations were bald assertions, including claims that its products were the strongest in America and better than the competition. Symons also distributed advertisements depicting its metal plate attached to an EFCO plate, conveying the message that the two could be safely commingled. EFCO rebutted Symons' claims with evidence that Symons' products were of inferior quality. Moreover, there was evidence that Symons' products could not bear as great a load as

7

EFCO's, making it hazardous to commingle the two products. Thus, the jury was justified in finding that EFCO had satisfied its burden of proving Symons had made false assertions, and the district court's failure to give a "tests prove" instruction was not reversible error.[4]

2.    Causation

Symons claims that EFCO failed to prove that any damages resulted from Symons' misconduct. EFCO was required to prove that its damages were causally related to Symons' misconduct. See Rhone-Poulenc Rorer Pharm., Inc. v. Marion Merrell Dow, Inc., 93 F.3d 511, 515 (8th Cir. 1996). However, there is no support for Symons' contention that EFCO was required to prove this causal link with direct rather than circumstantial evidence. See BASF Corp. v. Old World Trading Co., 41 F.3d 1081, 1093-1094 (7th Cir. 1994). Moreover, when an advertisement is literally false (as opposed to implicitly deceptive), the plaintiff need not prove that any of its customers were actually persuaded by the advertising. See United Indus., 140 F.3d at 1180-81.

There was a sufficient nexus between Symons' conduct and EFCO's damages. EFCO provided the jury with substantial evidence from which it could infer that EFCO's losses were caused by Symons' misconduct. Through Hancock, EFCO presented evidence of an erosion of its revenues during the period of misconduct.

---

[4]It is unclear how a "tests prove" instruction could have helped Symons' case. EFCO produced evidence that the product tests that Symons did perform were flawed. Symons advertised that tests proved its product was superior in strength to its competitors. However, Symons tested the products in very limited applications. When tested by EFCO in other common applications, Symons' product failed before EFCO's comparative product. Thus, Symons' blanket assertion that its products were stronger than those of its competitors was not supported by Symons' tests, and actually disproved by EFCO's tests.

During this same period, Symons' revenues increased at a nearly identical rate.[5] Further, EFCO produced evidence that its sales force was losing clients to Symons. Taken together, this evidence supports an inference that the shift in the companies' market shares was due to Symons' misconduct, and the jury did not err in so finding.

3.  Damages.

Symons contends that EFCO's evidence was insufficient to support the jury's damage award. We disagree. The district court held a lengthy hearing to determine whether EFCO's expert testimony on damages was admissible. It determined that such testimony was admissible, and we have agreed. Hancock's calculations provided the jury with sufficient evidence from which to make a damages determination.

We also note that at trial Symons put forth its own damages theory. Symons' expert, Orazem, testified that by his calculations, EFCO was not damaged at all by Symons' misconduct. The jury was permitted to hear Orazem's theories, as well as his criticisms of Hancock's calculations and methodology. Presented with these conflicting analyses, the jury found Hancock's calculations a more accurate measure. We will not disturb that finding.

D.  Trade Secrets.

Symons argues that EFCO failed to prove that it misappropriated any trade secrets. It further argues that even if it did misappropriate secrets, EFCO failed to show that any damages were caused by such misappropriation.

_____

[5]Symons attacks Hancock's damage analysis for failing to account for all possible market forces. This criticism is more appropriate to a discussion of damages than causation, for it addresses what amount of EFCO's loss is attributable to Symons' conduct, rather than whether Symons' caused the loss in the first instance.

1.      Misappropriation of Trade Secrets.

Symons' arguments are based on three theories: (1) no trade secrets existed; (2) any secret that had once existed was now public information because it was visible to the naked eye or because EFCO did not take sufficient measures to ensure its secrecy; (3) EFCO failed to prove that Symons used any of these purported secrets.

Iowa law defines trade secrets broadly for the purposes of IUTSA. A trade secret is:

> [I]nformation, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:
>
> a.      Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.
>
> b.      Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

Iowa Code § 550.2(4) (2000).

Iowa's broad definition of trade secrets, together with its liberal construction by Iowa courts, see, e.g., U.S. West Communications v. Office of Consumer Advocate, 498 N.W.2d 711, 714 (Iowa 1993), rebut Symons' contention that any of EFCO's research, development, pricing, cost or marketing data fell outside the definition of a trade secret. So long as EFCO received value from keeping the information secret and

made attempts to keep it secret, the information is considered a trade secret under Iowa law.

Symons argues that EFCO did not make efforts to keep its information secret. EFCO conceded that it gave tours of its factory, but it screened tour candidates to ensure that none of its secret information would be at risk. Further, EFCO produced testimony that none of its trade secrets would be ascertainable to the naked eye by looking at its products because its manufacturing process cloaked the secrets.

Symons next asserts that it did not use any of EFCO's secrets in its products. Symons fails to recognize that in making a claim for misappropriation of a trade secret, the plaintiff need not show that the defendant actually used the secret. See Iowa Code § 550.2(3) (2000) (defining misappropriation to include mere acquisition of trade secret). The extent to which Symons actually employed the trade secrets becomes appropriate when determining damages. See Iowa Code § 550.4 (2000).

2.      Causation and Damages.

In order to obtain damages, EFCO was required to prove that it was damaged by Symons' misappropriation of one or more of its trade secrets. See id.; Gerst v. Marshall, 549 N.W.2d 810, 817-18 (Iowa 1996).

The same evidence that supports a jury inference of causation on EFCO's false advertising claim supports an inference that EFCO was damaged by Symons' misappropriation of trade secrets. As discussed above, EFCO produced evidence of a general revenue erosion that coincided with Symons' increased revenues, as well as evidence of sales lost to Symons. Further, EFCO produced evidence of losses in Super Stud revenues that coincided with the introduction of Symons' rival product, the Symons Soldier, developed using EFCO's trade secrets. From this evidence, the jury

could properly infer that Symons' misappropriations damaged EFCO and could determine the extent of such damage.

II.    EFCO'S CROSS-APPEAL.

EFCO argues that the district court erred in modifying the jury's compensatory damage award to account for duplicative damages, and seeks prejudgment interest on its compensatory damages award. EFCO further urges us to reverse the district court's grant of judgment as a matter of law in favor of Symons on EFCO's interference with prospective business relations claim. Lastly, EFCO maintains that the district court abused its discretion by refusing to award EFCO attorneys' fees on its trade secret claim.

A.    Modification of EFCO's Damages Award.

The district court charged the jury with determining independently for each claim what damages would be appropriate for EFCO. It specifically instructed the jury not to account for duplication, explaining that it would later modify the damages award to eliminate any duplicative amounts. The jury returned compensatory damages awards for EFCO in the amount of $13 million for false advertising, $12.3 million for violation of IUTSA, $9.7 million for interference with prospective business relations,[6] and $200,000 for inducement of Phillips' breach of fiduciary duty. The district court reduced this award to $13 million, finding that this amount "reache[d] the outer limit

_____

[6]The district court subsequently vacated the jury verdict on the claim of interference with prospective business relations and entered judgment as a matter of law in favor of Symons.

12

of what EFCO proved were its commercial injuries and damages on all its theories."[7] EFCO Corp. v. Symons Corp., No. 4-96-CV-80552 (S.D. Iowa April 12, 1999) (Rulings on Post-J. Mot., at 13).

Although a party is entitled to proceed on various theories of recovery, a party is not entitled to collect multiple awards for the same injury. See Bold v. Simpson, 802 F.2d 314, 321 (8th Cir. 1986). By Hancock's own testimony, EFCO conceded that its damages calculations on its various theories overlapped. Therefore, EFCO is not permitted to collect separate damage awards for each of its theories.

EFCO suggests that we scrutinize each jury award separately, attempt to parse out exactly what amount of each award was attributable to each distinct injury it alleged, and add any nonduplicative amount to its award. Because of the danger of inaccuracy inherent in such speculative guesswork, we decline EFCO's invitation. Cf. Standley v. Chilhowee R-IV Sch. Dist., 5 F.3d 319, 324 (8th Cir. 1993). Rather, after examining the record, we believe the district court's award adequately reflects the damages proved by EFCO.

B.     Prejudgment Interest.

After modifying EFCO's damages award to account for duplication, the district court denied EFCO prejudgment interest on the award. The award of prejudgment interest is generally entrusted to the district court's discretion. See Mansker v. TMG Life Ins. Co., 54 F.3d 1322, 1330 (8th Cir. 1995).

Because claims of false advertising in violation of the Lanham Act are governed by federal law, the issue of prejudgment interest in a  Lanham Act recovery is also

---

[7]Apart from the $13 million award, EFCO was awarded an additional $1.1 million in exemplary damages. The amount of this award is not at issue in this appeal.

governed by federal law. A district court has discretion to deny prejudgment interest in Lanham Act cases. See Pioneer Hi-Bred Int'l v. Holden Found. Seeds, Inc., 35 F.3d 1226, 1246 (8th Cir. 1994).

In denying prejudgment interest, the district court noted that the nature of the damages in this suit made it difficult to determine what, if any, damages EFCO had sustained as a result of Symons' conduct. In Pioneer Hi-Bred, we remarked that one of the major goals of prejudgment interest was to promote settlement, but that where a case presents damages that are "virtually impossible to ascertain prior to trial," pre-trial settlement becomes a far less compelling goal. Id. Under federal law, the district court was well within its discretion in deciding that equity and fairness counseled against prejudgment interest.

However, that does not end our analysis. EFCO's damage award included compensation for Symons' IUTSA violation. Because IUTSA is a state-law claim, Iowa rules on prejudgment interest apply. See First Am. State Bank v. Continental Ins. Co., 897 F.2d 319, 327-28 (8th Cir. 1990).

The applicable statute in force at the time of this action provided for prejudgment interest on all Iowa claims. See Iowa Code § 535.3(1) (1997). This statutory scheme has been considered by Iowa courts as mandating prejudgment interest on the overwhelming majority of claims, with only a few specific exceptions. See In Re Marriage of Baculis, 430 N.W.2d 399, 402-404 (Iowa 1988) (outlining recognized exceptions to mandatory prejudgment interest).

In Pioneer Hi-Bred, our circuit recognized an additional exception to Iowa's mandatory prejudgment interest rule. We examined Iowa's other exceptions to its rigid prejudgment interest rule, and concluded that "when faced with particular situations in which an award of prejudgment interest serves little purpose or would otherwise prove inequitable, the Iowa courts have on several occasions created exceptions to this

general rule." Pioneer Hi-Bred, 35 F.3d at 1246. After considering the amount of the damage award, the length of the proceedings, and the difficulty in determining any measure of damages pre-trial, we affirmed the district court's denial of prejudgment interest on the plaintiff's award. See id.

The factors that guided our decision in Pioneer Hi-Bred are also present in this case. While the length of the proceedings here was not as great as in Pioneer Hi-Bred, nearly three years elapsed between complaint and judgment. Further, EFCO's damage award was quite substantial. All told, EFCO's compensatory damage award totals $13 million, which includes past and future damages. Lastly, this damage amount was hotly contested, and both parties presented complex calculations that resulted in very different damage determinations, making it difficult to foster pre-trial settlement discussions. Any of these factors standing alone would likely not have supported the district court's denial of prejudgment interest. However, together the factors convince us that the goals of prejudgment interest would not be served by granting such an award in this case. The district court's denial of prejudgment interest is consistent with our decision in Pioneer Hi-Bred, and will not be disturbed.

C.     Intentional Interference With Prospective Business Relations.

Following the trial, the jury returned a verdict of $9.7 million in favor of EFCO on its claim that Symons tortiously interfered with its prospective business relationships. In post-trial rulings, the district court vacated the jury award and entered judgment as a matter of law on behalf of Symons.

In order to prevail on a claim of intentional interference with prospective business relationships, EFCO was required to prove that Symons acted with the purpose of injuring or destroying EFCO's business. See Compiano v. Hawkeye Bank & Trust, 588 N.W.2d 462, 464 (Iowa 1999). If a business acts for more than one

15

purpose, the improper purpose must predominate to establish liability. See Harsha v. State Sav. Bank, 346 N.W.2d 791, 799 (Iowa 1984).

This case involves a mature niche market, dominated for the most part by EFCO and Symons. Thus, an increase in Symons' market share would be expected to coincide with a corresponding decrease in EFCO's business. The evidence established that Symons was trying to gain market share, and that EFCO's corresponding losses were a corollary result. EFCO did not present evidence that Symons' predominant purpose was to injure EFCO. Accordingly, the district court did not err in reversing the jury verdict.

D.    Attorneys' Fees.

EFCO appeals the district court's denial of attorneys' fees for its prosecution of its IUTSA claim, arguing the district court used an inappropriate standard to determine if an award of fees was warranted. We review for an abuse of discretion. Cf. Olsen v. Nieman's Ltd., 579 N.W.2d 299, 316 (Iowa 1998).

The district court denied attorneys' fees in part because "neither [party] engaged in conduct so shocking to the conscience as to warrant an award of attorney fees." (Rulings on Post-J. Mot., at 21.) EFCO interprets this statement as an indication the district court was using a "shock the conscience" standard for determining if attorneys' fees were warranted. We disagree. On the same page, the district court pronounces the rule on attorneys' fees, recognizing that "[t]he court has considerable discretion to determine whether a defendant's wrongful conduct, be it intentional, deliberate, or even malicious, should result in the plaintiff's recovery of part or all of its attorney fees." (Id. (citing CJC Holdings, Inc. v. Wright & Lato, Inc., 979 F.2d 60, 65 (5th Cir. 1992) and Olsen, 579 N.W.2d at 316).) Because the court correctly noted that a grant of attorneys' fees was within its discretion, the district court's further reflection that the parties' conduct did not shock its conscience cannot be interpreted as the legal standard

16

by which the district court thought itself bound.  We affirm the district court's denial of attorneys' fees.

## CONCLUSION

For the reasons stated, we affirm the district court in all respects.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.