SENECA COMPANIES, INC., Plaintiff,

v.

**John BECKER and Midway Industrial Supply, Inc., Defendants.**

No. 4:15–cv–00035–JEG

United States District Court, S.D. Iowa, Central Division.

Signed September 17, 2015

Christine E. Bestor Townsend, Espnola F. Cartmill, Michael R. Reck, Belin McCormick, P.C., Des Moines, IA, for Plaintiff.

Bradley C. Obermeier, Duncan, Green, Brown & Langeness, PC, Des Moines, IA, David J. Goldstein, George R. Wood, Joseph D. Weiner, Littler Mendelson PC, Minneapolis, MN, for Defendants.

## ORDER

JAMES E. GRITZNER, Senior Judge, UNITED STATES DISTRICT COURT

This matter is before the Court on Motion by Defendant Midway Industrial Supply, Inc., (Midway) to dismiss the Amended Complaint by Plaintiff Seneca Companies, Inc., (Seneca) pursuant to Federal Rule of Civil Procedure 12(b)(6), or in the alternative, to transfer venue to the U.S. District Court for the District of Minnesota. Seneca resists Midway's Motion. The parties have not requested a hearing, and the Court finds a hearing is unnecessary. The Motion is fully submitted and ready for consideration.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Courts consider motions to dismiss "accepting the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." *Cockram v. Genesco, Inc.*, 680 F.3d 1046, 1056 (8th Cir.2012) (citation omitted).

Seneca is an Iowa corporation headquartered in Iowa that distributes and installs industrial paint finishing systems. Midway is one of Seneca's competitors. Defendant John Becker (Becker) is a resident of Minnesota and former sales representative for Seneca. Becker worked for Seneca from 2000 until his voluntary resignation on January 23, 2015, effective that day. While Seneca's employee, Becker had access to Seneca's confidential and proprietary business information. Seneca alleges that prior to his resignation, Becker forwarded a number of Seneca's customer emails and backorder lists to Becker's personal email account and downloaded Seneca's customer database, all without Seneca's permission. In January 2015, Becker forwarded to a Midway sales manager confidential Seneca information, which included quotes, estimates, and billing documents. Seneca further alleges that on January 25, 2015, after resigning, Becker attached a storage device to his Seneca-provided laptop and without authorization gained access to Seneca's files, including vendor files, a complete 2014 and 2015 quote history, and customer purchase history. On January 26, 2015, Becker began working for Midway, where he is still employed. Seneca alleges that because Becker and Midway acquired Seneca's business information with-

out its consent, both Becker and Midway have an unfair business advantage and are in a position to solicit business away from Seneca.

Seneca filed a Complaint against Becker in this Court on February 2, 2014, alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 (CFAA), misappropriation of trade secrets, and breach of the duties of loyalty and good faith, and requesting compensatory damages, punitive damages, and injunctive relief. On May 12, 2015, Seneca filed an Amended Complaint adding Midway as a Defendant on the claim alleging misappropriation of trade secrets against Midway.

Midway filed this motion to dismiss for failure to state a claim and alternative motion to transfer venue, arguing that Seneca has not stated an actionable claim for misappropriation of trade secrets under Iowa law, Seneca's claim against Midway is made in bad faith, Midway is entitled to attorneys' fees for Seneca's bad-faith claim, and this matter should be transferred to the District of Minnesota. Seneca resists.

## II. DISCUSSION

### A. Jurisdiction

Seneca is an Iowa corporation with its principal place of business in Polk County, Iowa. Becker is a resident of Farmington, Minnesota. Midway is a Wisconsin corporation with its principal place of business in Minneapolis, Minnesota. This Court has original jurisdiction over Seneca's CFAA claim against Becker pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over Seneca's remaining state law claims against Becker and Midway pursuant to 28 U.S.C. § 1367.

### B. Procedural Posture

■ In the filed memoranda supporting and opposing the instant motion to dismiss, both parties have presented the Court with matters outside the pleadings. On a motion to dismiss pursuant to Rule 12(b)(6), a court cannot generally consider matters outside of the pleadings unless the court converts the motion into a motion for summary judgment pursuant to Rule 56. Fed.R.Civ.P. 12(d). However, on Rule 12(b)(6) motions, "courts are not strictly limited to the four corners of complaints." *Dittmer Props., L.P. v. F.D.I.C.*, 708 F.3d 1011, 1021 (8th Cir.2013). As the Eighth Circuit has noted,

> [w]hile courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned; without converting the motion into one for summary judgment.

*Id.* at 1021 (quoting *Miller v. Redwood Toxicology Lab., Inc.*, 688 F.3d 928, 931 n. 3 (8th Cir.2012) (internal quotation marks and citation omitted)). Here, the authenticity of documents outside the complaint (for example, Becker's email to Midway's sales manager and attachments) is not questioned. The Court declines to consider matters outside of the pleadings that are not embraced necessarily by the complaint and therefore does not convert the present motion to dismiss into a motion for summary judgment. *Skyberg v. United Food and Commercial Workers Int'l Union*, 5 F.3d 297, 302 n. 2 (8th Cir.1993) (noting that a motion to dismiss is not automatically converted into a motion for summary judgment "where the district court's order makes clear that the judge ruled only on the motion to dismiss") (citing *E.E.O.C. v. Reno*, 758 F.2d 581, 583 n. 6 (11th Cir.1985)).

## C. Rule 12(b)(6) Motion

### 1. Standard for the Motion to Dismiss

Federal Rule of Civil Procedure 8(a)(2) requires a complaint to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." "In ruling on a motion to dismiss ... courts 'must take all of the factual allegations in the complaint as true,' but 'are not bound to accept as true a legal conclusion couched as a factual allegation.'" *Wood v. Moss*, ── U.S. ──, 134 S.Ct. 2056, 2065 n. 5, 188 L.Ed.2d 1039 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "[D]etailed factual allegations" are not required, but the "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (alteration in original). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 570, 127 S.Ct. 1955). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint that offers "'naked assertion[s]' devoid of 'further factual enhancement'" is not sufficient. *Id.* (alteration in original) (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955).

On a motion to dismiss for failure to state a claim, the question for the Court is not whether the Plaintiff will ultimately prevail, but whether the complaint is "sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530, 131 S.Ct. 1289, 179 L.Ed.2d 233 (2011) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 514, 122 S.Ct. 992, 152 L.Ed.2d 1 (2002)). While *Twombly's* plausibility standard is not a "'probability requirement, ... it asks for more than a sheer possibility that the defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. 1955). The Court must be mindful that "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556, 127 S.Ct. 1955 (quoting *Scheuer*, 416 U.S. at 236, 94 S.Ct. 1683). Further, a court must "review the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation." *Whitney v. Guys, Inc.*, 700 F.3d 1118, 1128 (8th Cir.2012) (citation and internal quotation marks omitted). "Determining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937.

### 2. Misappropriation of Trade Secrets

██ A misappropriation of trade secrets claim may be established under either the Iowa Uniform Trade Secrets Act (IUTSA) or Iowa common law. *See 205 Corp. v. Brandow*, 517 N.W.2d 548, 552 (Iowa 1994) ("[IUTSA] has not preempted all tort theories involving trade secrets."). "The elements of a claim of misappropriation of trade secret under the Iowa Uniform Trade Secrets Act and Iowa common law are practically indistinguishable." *Titan Int'l, Inc. v. Bridgestone Firestone N. Am. Tire, LLC*, 752 F.Supp.2d 1032, 1039 (S.D.Iowa 2010) (citing *Cemen Tech, Inc. v. Three D Indus.*, 753 N.W.2d 1, 7 (Iowa 2008)). The elements of a common law

claim for misappropriation of trade secrets are "(1) existence of a trade secret, (2) acquisition of the secret as a result of a confidential relationship, and (3) unauthorized use of the secret." *Lemmon v. Hendrickson,* 559 N.W.2d 278, 279 (Iowa 1997).

IUTSA provides that the owner of a trade secret may enjoin an actual or threatened misappropriation of a trade secret or may request monetary damages for misappropriation of a trade secret. Iowa Code §§ 550.3(1), 550.4(1); *Cemen Tech,* 753 N.W.2d at 6. Under IUTSA, "misappropriation" has several meanings, including "[a]cquisition of a trade secret by a person who knows that the trade secret is acquired by improper means," and "[d]isclosure or use of a trade secret by a person who at the time of disclosure or use, knows that the trade secret is derived from or through a person who had utilized improper means to acquire the trade secret." Iowa Code § 550.2(3). Each of the terms "improper means," "knows," and "trade secret" is defined by IUTSA. The term "improper means" includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy...." *Id.* § 550.2(1). " 'Knows' or 'knowledge' means that a person has actual knowledge of information or a circumstance or that the person has reason to know of the information or circumstance." *Id.* § 550.2(2). "Trade secret" means

information, including but not limited to a formula, pattern, compilation, program, device, method, technique, or process that is both of the following:

a. Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by a person able to obtain economic value from its disclosure or use.

b. Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

*Id.* § 550.2(4). Further refining the scope of "trade secret," the Iowa Supreme Court has adopted Restatement (Third) of Unfair Competition § 39 cmt. d (1995).

A trade secret can relate to technical matters such as the composition or design of a product, a method of manufacture, or the know-how necessary to perform a particular operation or service. A trade secret can also relate to other aspects of business operations such as pricing and marketing techniques or the identity and requirements of customers.

*Cemen Tech,* 753 N.W.2d at 7 (quoting *Restatement (Third) of Unfair Competition* § 39 cmt. d (1995)).

▮ A plaintiff need not allege the defendant actually used its trade secret to state a claim under IUTSA. *See EFCO Corp. v. Symons Corp.,* 219 F.3d 734, 741 (8th Cir.2000) (noting that under "Iowa's broad definition of trade secrets" and "its liberal construction by Iowa courts," if a plaintiff "received value from keeping the information secret and made attempts to keep it secret, the information is considered a trade secret under Iowa law" and "that in making a claim for misappropriation of a trade secret, the plaintiff need not show that the defendant actually used the secret" (citing Iowa Code § 550.2(3))). The extent to which a defendant uses a misappropriated trade secret becomes relevant when determining damages. *See id.*; Iowa Code § 550.4.

The Iowa Supreme Court has held that "information may also fall within the definition of a trade secret, including such matters as maintenance of data on customer lists and needs, source of supplies, confidential costs, price data and figures." *US West Commc'ns Inc. v. Office of Consumer Advocate,* 498 N.W.2d 711, 714 (Iowa 1993) (citing 2 Roger M. Millgrim, *Millgrim on Trade Secrets,* § 9.03(3)(f) (1991)). "Trade secrets can range from

customer information, to financial information, to information about manufacturing processes to the composition of products. There is virtually no category of information that cannot, as long as the information is protected from disclosure to the public, constitute a trade secret." *Id.* (quoting Thomas J. Collin, *Determining Whether Information Is a Trade Secret Under Ohio Law,* 19 U. Tol. L.Rev. 543, 545 (1988)). The Iowa Supreme Court concluded "that a broad range of business data and facts which, if kept secret, provide the holder with an economic advantage over competitors or others, qualify as trade secrets." *Id.* Seneca has alleged sufficiently that its information was trade-secret, which Midway does not dispute.

■ Midway challenges the sufficiency of Seneca's Amended Complaint on two grounds, arguing that Seneca has not alleged Midway used Seneca's trade secrets and that Seneca has insufficiently alleged Midway acquired Seneca's trade secrets by improper means. Much of the authority cited by Midway in support of its position involves summary judgment and is therefore not relevant to a motion to dismiss. "The standards for dismissing a complaint under Rule 12(b)(6) and the standards for granting summary judgment are substantially different." *Buck v. F.D.I.C.,* 75 F.3d 1285, 1288 & n. 3 (8th Cir.1996). On a motion to dismiss, the Court must draw on its experience and common sense to determine whether Seneca has stated a plausible claim. Relevance of Midway's citations notwithstanding, Midway's first argument fails under IUTSA because, as noted above, a plaintiff need not allege the defendant actually used its trade secret to state a claim under IUTSA. *EFCO Corp.,* 219 F.3d at 741. Moreover, based upon the allegations in the amended complaint and those documents the Court has determined are embraced by the amended complaint, Seneca has made plausible allegations that Midway used Seneca's confidential business information to gain a competitive advantage. Seneca alleges that Becker sent Seneca's confidential information to himself and Midway. Midway competes for business with Seneca and continues to employ Becker. Seneca alleges that Midway, as a result of learning Seneca's confidential information, can solicit business away from Seneca. When viewed as a whole, Seneca's allegations adequately state a claim that Midway misappropriated Seneca's trade secrets.

Midway's argument that Seneca has insufficiently alleged Midway received Seneca's information by improper means is also unpersuasive. Seneca has alleged, in brief, that Becker took its confidential information without permission and sent it to Midway. This is sufficient on its own to allege that Midway acquired Seneca's trade secrets via improper means. As the Iowa Supreme Court has concluded, a reasonable fact finder could easily find an employee owes an employer a "fiduciary duty to maintain the secrecy of the information [the employer] described as trade secrets." *Econ. Roofing & Insulating Co. v. Zumaris,* 538 N.W.2d 641, 648 (Iowa 1995) (reversing the district court's directed verdict for defendants on plaintiff's trade secret claim where plaintiff alleged former employees had misappropriated customer correspondence, bid information, customer and pricing lists, profit reports, and cost information, all of which had been compiled at a considerable expense to the plaintiff, and delivered that information to a newly-formed company established by defendants, because defendants had a fiduciary duty to their former employer not to disclose confidential information and plaintiff should have been allowed to present evidence on its claim). Because IUTSA defines improper means to include breach of a duty to maintain secrecy, it would therefore be reasonable to conclude that a disclosure by Becker to Midway in breach

of Becker's duty would be a disclosure by improper means, and hence that Midway's acquisition of the information would necessarily be by improper means. *See Uncle B's Bakery, Inc. v. O'Rourke,* 920 F.Supp. 1405, 1429 (N.D.Iowa 1996) (reasoning that where an employee has a duty not to disclose its employer's confidential information, receipt of information in breach of the employee's duty would be through improper means).

Midway argues that courts regularly dismiss misappropriation of trade secrets claims under comparable circumstances. However, the authority Midway cites involves summary judgment, not a motion to dismiss, and not a comparable legal circumstance. *See Sun Media Sys. v. KDSM, LLC,* 564 F.Supp.2d 946, 973 (S.D.Iowa 2008) (granting defendants' motion for summary judgment because, among other things, plaintiff had not proffered sufficient evidence that its confidential information qualified as a trade secret); *Cemen Tech,* 753 N.W.2d at 10 (reversing summary judgment for defendant because plaintiff "presented sufficient evidence to generate a fact question" on its trade secrets claim); *Titan Int'l,* 752 F.Supp.2d 1032 (summary judgment). These cited authorities are distinguishable from the instant case because Seneca is not required to prove its case to survive a motion to dismiss; it needs only to state a plausible claim.

The Court determines that, taken as a whole, Seneca's amended complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief [for misappropriation under IUTSA] that is plausible on its face.'" *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937 (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955).

### 3. Attorneys' Fees under IUTSA

Midway argues it is entitled to attorney fees under the IUTSA, which provides that a court "may award actual and reasonable attorney fees to the prevailing party in an action under this chapter if ... a claim of misappropriation is made in bad faith." Iowa Code § 550.6. Because Midway is not the prevailing party on this motion, there is no basis for the award of attorney fees.

### D. Request to Transfer Venue

Midway argues this case should be transferred to the U.S. District Court for the District of Minnesota pursuant to 28 U.S.C. § 1404(a) because (1) Seneca could have brought suit in the District of Minnesota since the CFAA provides subject matter jurisdiction to the federal courts and Midway is subject to personal jurisdiction in Minnesota; (2) the convenience of the parties would be better served in Minnesota; (3) the convenience of witnesses and ease of access to sources of proof favor transfer to Minnesota; (4) the underlying facts of the case did not occur in the Southern District of Iowa; (5) Seneca's claim was made in bad faith; (6) Minnesota courts are familiar with applying Iowa law; (7) minimal trial preparation has been conducted; and (8) Seneca will not be unduly inconvenienced by transfer. Seneca opposes Midway's motion to transfer venue, arguing the transfer factors under § 1404(a) do not support transfer.

### 1. Transfer Standard under 28 U.S.C. § 1404(a)

Title 28 U.S.C. § 1404(a) states that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought...." 28 U.S.C. § 1404(a). The statute's purpose is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v.*

*Barrack,* 376 U.S. 612, 616, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964) · (internal quotation marks omitted) (quoting *Cont'l Grain Co. v. The FBL–585,* 364 U.S. 19, 24, 80 S.Ct. 1470, 4 L.Ed.2d 1540 (1960)). "In general, federal courts give considerable deference to a plaintiff's choice of forum and thus the party seeking a transfer under section 1404(a) typically bears the burden of proving that a transfer is warranted." *Terra Int'l, Inc. v. Miss. Chem. Corp.,* 119 F.3d 688, 695 (8th Cir.1997) (citing *Jumara v. State Farm Ins. Co.,* 55 F.3d 873, 879 (3d Cir.1995); *Scheidt v. Klein,* 956 F.2d 963, 965 (10th Cir.1992)). "Courts will normally hesitate to disturb a plaintiff's choice unless the moving party demonstrates that the balance of convenience and justice weighs heavily in favor of transfer." *Wells Fargo Fin. Leasing, Inc. v. Orlando Magic Ltd.,* 431 F.Supp.2d 955, 966–67 (S.D.Iowa 2006) (citing *Kovatch Corp. v. Rockwood Sys. Corp.,* 666 F.Supp. 707, 708 (M.D.Pa.1986)). District courts have discretion in deciding whether to transfer a case. *GreatAmerica Leasing Corp. v. Avery Air Conditioning/Heating & A-Abaca Servs., Inc.,* No. 11–CV–66–LRR, 2012 WL 443586, at *6 (N.D.Iowa Feb. 10, 2012). In deciding a motion to transfer under 28 U.S.C. 1404(a), the Court considers the convenience of the parties, the convenience of the witnesses, and the interests of justice. *Terra Int'l,* 119 F.3d at 691 (citing 28 U.S.C. § 1404(a)). The Court's evaluation is not limited to these factors only. *Id.* The Court must "weigh in the balance a number of case-specific factors." *Id.* (quoting *Stewart Org., Inc. v. Ricoh Corp.,* 487 U.S. 22, 29, 108 S.Ct. 2239, 101 L.Ed.2d 22 (1988)).

▆▆▆ "The convenience of non-party witnesses is generally considered to be one of the most important factors to be weighed in the venue transfer analysis." *Medicap Pharms., Inc. v. Faidley,* 416 F.Supp.2d 678, 687 (S.D.Iowa 2006). "The Court 'must examine the materiality and importance of the anticipated witnesses' testimony and then determine their accessibility and convenience to the forum. The burden is on the defendant to provide these facts by way of affidavit or other information.'" *Wells Fargo Fin. Leasing, Inc. v. NCH Healthcare Sys., Inc.,* 756 F.Supp.2d 1086, 1101 (S.D.Iowa 2010) (quoting *Reid–Walen v. Hansen,* 933 F.2d 1390, 1396 (8th Cir.1991)).

## 2. Venue in the District of Minnesota

▆▆▆ "The initial inquiry in ruling on a motion under § 1404(a) is whether this case 'might have been brought' in the [District of Minnesota]." *Biometics, LLC v. New Womyn, Inc.,* 112 F.Supp.2d 869, 875 (E.D.Mo.2000). Seneca has alleged Becker violated CFAA, a federal statute, which can be brought in any district court, *see* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."), and Becker is a citizen of Minnesota, making venue proper in the District of Minnesota, *see* 28 U.S.C. § 1391 ("A civil action may be brought in (1) a judicial district in which any defendant resides ..."). Accordingly, Seneca could have brought suit in the District of Minnesota. *See Steen v. Murray,* 770 F.3d 698, 702 (8th Cir.2014) ("[V]enue may be proper in any of a number of districts, provided only that a substantial part of the events giving rise to the claim occurred there.") (citation omitted).

## 3. Convenience

▆▆▆ In balancing the convenience factor, the Court may consider

(1) the convenience of the parties, (2) the convenience of the witnesses—including the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony, (3) the accessibility to records and docu-

ments, (4) the location where the conduct complained of occurred, and (5) the applicability of each forum state's substantive law.

*Lyngholm v. FedEx Ground Package Sys., Inc.,* 827 F.Supp.2d 912, 919 (S.D.Iowa 2011) (quoting *Terra Int'l,* 119 F.3d at 697).

### a. Convenience of the Parties

■ Midway argues that because "Midway maintains its principal place of business [in Minnesota] and Becker lives [in Minnesota] ... it is clearly more convenient for all parties to litigate this matter in Minnesota." Midway's Mot. to Dismiss Br. 13, ECF No. 19–2. It appears Minnesota may indeed be more convenient for Midway and Becker. However, Midway's § 1404(a) analysis does not address Seneca's convenience. Seneca has its principal place of business in Iowa. Seneca's selected counsel, witnesses, and experts are located in Iowa. While transfer to Minnesota may be more convenient for Midway, it would likely be correspondingly less convenient for Seneca. "Merely shifting the inconvenience from one side to the other ... is not a permissible justification for a change of venue." *Terra Int'l,* 119 F.3d at 696–97 (quoting *Scheidt,* 956 F.2d at 966. Because transfer to the District of Minnesota would merely shift inconvenience from Midway to Seneca, the convenience of parties factor does not weigh in favor of transfer.

### b. Convenience of the Witnesses

Midway next argues that transferring this case to the District of Minnesota would be more convenient for "virtually every potential party and non-party witness." Midway's Mot. to Dismiss Br. at 14, ECF No. 19–2. In support of its position, Midway points to four of its employees who have "relevant information," as well as two potential non-party witnesses: a Minnesota-based witness identified by

Midway and a Tennessee-based vendor identified by Seneca to conduct forensic data collection. *Id.* In opposition, Seneca asserts that its witnesses are in the Southern District of Iowa, and its expert witness is in Iowa. Seneca's Resist. 16; Exs. B & N, ECF No. 26.

■ Generally, a party seeking to transfer an action for convenience of the witnesses "must specify clearly, typically by affidavit, the key witnesses to be called and their location and must make a general statement of what their testimony will cover." *GreatAmerica,* 2012 WL 443586 at *8 (citing Charles A. Wright, Arthur R. Miller & Edward H. Cooper, 15 *Federal Practice and Procedure* § 3851, at 425 (3d ed.2007)). Midway identifies several of its employee witnesses, but the assertion that its witnesses have "relevant information" does not specify clearly the nature of their proposed testimony. As the court determined in *Medicap Pharms., Inc. v. Faidley,* 416 F.Supp.2d at 687–88, because the defendant failed to name any potential witness and to provide more than speculative descriptions of testimony, the defendant did not carry its burden on the convenience of witnesses factor. Similarly here, while Midway has identified several witnesses, it has not attempted to identify relevant testimony to be given and has not indicated the materiality or importance of that testimony. Midway also fails to identify whether it will be difficult for its witnesses to testify in Iowa. *Cf. NCH Healthcare Sys.,* 756 F.Supp.2d at 1102 (finding the defendant adequately demonstrated that the convenience of witnesses weighed in favor of transfer by identifying various non-party witnesses, indicating how their testimonies were pertinent to the case, and providing their anticipated testimonies as well as the materiality and importance of those anticipated testimonies). Moreover, Midway has offered no information as to

"the willingness of witnesses to appear, the ability to subpoena witnesses, and the adequacy of deposition testimony." *See id.* at 1100–01. Midway's assertion that the named witnesses have "relevant information" is insufficient to carry Midway's burden on the convenience of witnesses factor.

The Court is similarly unpersuaded by Midway's assertion that the location of documents and records relevant to the case weighs in favor of transfer. As the court noted in *Medicap Pharmacies,* "[w]hile access to books and records is a factor to be taken into account when determining if transfer is warranted, modern technology allows easy reproduction and little weight should be given if the records can be easily transported." *Medicap Pharms.,* 416 F.Supp.2d at 688. Midway has not offered any reason to believe relevant documentation could not easily be transported to the Southern District of Iowa.

For these reasons, the convenience of parties factor weighs against transfer.

### c. Interests of Justice

 Relevant factors affecting the "interests of justice" include

(1) judicial economy, (2) the plaintiff's choice of forum, (3) the comparative costs to the parties of litigating in each forum, (4) each party's ability to enforce a judgement, (5) obstacles to a fair trial, (6) conflict of law issues, and (7) the advantages of having a local court determine questions of local law.

*Terra Int'l,* 119 F.3d at 696. Midway offers little to suggest the interests of justice are served by a transfer to Minnesota. Instead, Midway argues Seneca's choice of forum is not entitled to deference, and that the interests of justice do not clearly weigh *against* transfer (arguing, for instance, that Minnesota courts are not unfamiliar with Iowa law and transfer would not result in undue prejudice or delay). This argument inverts the burden. As the Court has already noted, the party seeking transfer bears the burden of proving that transfer is affirmatively warranted. *See Terra Int'l,* 119 F.3d at 695. Merely arguing the factors do not weigh against transfer is not enough. The interests of justice factor therefore weighs against transfer.

Although venue would be proper in either the Southern District of Iowa or the District of Minnesota, under the circumstances of this case, the factors the Court must consider under § 1404(a) do not support transfer. Transfer to the District of Minnesota would only enhance the convenience of one party to the detriment of the other, which is not a permissible justification for a change of venue. Midway has not demonstrated that convenience of witnesses would be served by transfer. Finally, there has been no showing that the interests of justice would be served.

### III. CONCLUSION

For the reasons stated, Defendant's Motion to Dismiss for failure to state a claim upon which relief can be granted, ECF No. 19, must be **denied**, and Defendant's Alternative Motion to Transfer Venue must also be **denied**.

**IT IS SO ORDERED.**