# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1327

_____

Dittmer Properties, L.P.

*Plaintiff - Appellant*

v.

Federal Deposit Insurance Corporation, as Receiver for Premier Bank, Jefferson City, Missouri; Cathy Richards, Successor Trustee of the Peters Family Trust u.t.a. Restated September 27, 2007, Assignee of a Fifty Percent General Partnership Interest in Barkley Center General Partnership Derived Origin; Cathy Richards

*Defendants - Appellees*

_____

No. 12-1329

_____

Buford Farrington; Dittmer Holdings, L.L.C.; Barkley Center Holdings, L.L.C.; UMB Bank, N.A.

*Plaintiffs - Appellants*

v.

Cathy Richards, Successor Trustee of the Peters Family Trust and Successor Personal Representative of the Estate of John Peters; CADC/RADC Venture 2011-1, L.L.C.

*Defendants - Appellees*

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.
_____

BEAM, Circuit Judge.

Dittmer Properties, L.P., Dittmer Holdings, L.L.C., Barkley Center Holdings, L.L.C., Bufurd Farrington, and UMB Bank, N.A. (collectively "Dittmer") appeal the district court's[1] dismissal under Federal Rule of Civil Procedure 12(b) of their two lawsuits against a failed bank, the Federal Deposit Insurance Corporation (FDIC) as the bank's receiver, and Cathy Richards, successor personal representative to the Estate of John Peters. We affirm.

## I.    BACKGROUND

Barkley Center General Partnership (Barkley) is a Missouri general partnership, that, at all times relevant to this action, had two equal general partners– John Peters and Joe Dittmer. Peters was the managing general partner, and this position, set forth in the amended partnership agreement, in addition to a durable power of attorney (POA) executed by Joe Dittmer, gave Peters broad authority to act for the benefit of Joe Dittmer's interest in Barkley. The amended partnership agreement and the POA expressly indicated that Peters had the authority to manage partnership property,

_____

[1]The Honorable Fernando J. Gaitan, Jr., Chief Judge, United States District Court for the Western District of Missouri.

execute mortgages against the property in Joe Dittmer's name as a Barkley partner, and generally transact partnership business in the manner that Peters thought proper.

In a series of transactions from July through September 2006, Premier Bank loaned Barkley $2,550,000, at the behest of Peters in his role as managing partner. Partnership property was used as collateral for the loan. Prior to the loan's execution, Joe Dittmer faxed a letter to Premier stating, "I have no problem with John Peters using Power of Attorney to encumber on Comm. Property of Barkley Partnership." The loan proceeds were used to fund Peters' individual business interests and service loans related to three properties owned solely by Peters–the Ranch at Cedar Creek, the Lodge of Cedar Creek, and Sports at Cedar Creek.

Joe Dittmer died on October 18, 2007, and Peters died on February 10, 2008. Barkley eventually defaulted on the loan. In the first of two eventual lawsuits arising out of the 2006 loan transaction to Barkley, Dittmer,[2] representing Joe Dittmer's half

---

[2]In actuality, UMB filed the first salvo in August 2009 in its capacity as successor trustee of the Joe Dittmer trust, suing Premier Bank in state court. In September 2010, UMB successfully moved to substitute Farrington as the party plaintiff because Farrington had recently been appointed Special Administrator of Joe Dittmer's estate. In October 2010, the FDIC was appointed receiver of Premier Bank, which had become insolvent, and consequently the FDIC successfully moved to be substituted for Premier Bank as the defendant. In January 2011, Farrington successfully moved to substitute Dittmer Properties, L.P., for himself as plaintiff on the ground that Joe Dittmer had assigned Dittmer Properties, L.P., his partnership interest in Barkley before he died. Also in January 2011, Farrington successfully moved to add Richards as a defendant, because she owned Peters' partnership interest in Barkley and had refused to join the litigation as a plaintiff. Shortly after gaining party status, the FDIC removed the case to federal court. The case proceeded in federal court. Dittmer asked for leave to file a second amended complaint, the FDIC filed a motion to dismiss and Richards filed a motion for judgment on the pleadings. Further, additional motions to add and substitute parties were also made, but nothing substantive had yet occurred when counsel for the various plaintiffs (all of the entities collectively labeled "Dittmer" above are represented by the same counsel) filed

interest in Barkley, sued Premier Bank, seeking declaratory judgment that the loan should be declared void as to Dittmer and sought to enjoin the bank from selling the encumbered property. The suit was filed in Missouri state court, and the primary basis for Dittmer's complaint was that Peters did not have authority from his partner, Joe Dittmer, to mortgage Barkley property for this transaction. Dittmer alleged that the bank improperly paid all of the loan proceeds to Peters' three Cedar Creek properties, and to itself to pay off other loans attributable to Peters' Cedar Creek properties.

On October 15, 2010, the FDIC was appointed receiver of Premier Bank after the bank became insolvent. See 12 U.S.C. § 1821 (section 1821 comprises the relevant portion of the Financial Institutions Reform, Recovery and Enforcement Act of 1989 (FIRREA),[3] for purposes of this case). Accordingly, the FDIC moved to be substituted for Premier Bank as the defendant in the case, and subsequently removed the case to federal court. The FDIC moved to dismiss the case based upon Federal Rule of Civil Procedure 12(b)(1) (for the declaratory and injunctive claims) and Rule 12(b)(6) (for the remaining common law claims). The district court denied the motion and instead stayed the action, pending the exhaustion of administrative remedies

another action in Missouri state court in September 2011. This action was purportedly on behalf of Farrington, Dittmer Holdings, L.L.C., Barkley Center Holdings, L.L.C., and UMB Bank and against the FDIC and Richards (the second case). The state court petition expressly admitted that it comprised the "same claims" as the case simultaneously pending in federal court (the first case). The FDIC removed this second case as well. In November 2011, the FDIC moved to substitute CADC/RADC Venture 2011-1, L.L.C. (CADC) as a defendant in both pending cases on the ground that the FDIC had transferred the note and deed of trust to CADC. The motion was granted in the second case, but the first case was dismissed in January 2012 before the motion was ruled upon. Accordingly, except when necessary for analysis, we will refer to a single case, with "Dittmer" as the plaintiff and FDIC, CADC and/or Richards as defendants.

[3]In § 1821, FIRREA establishes a comprehensive scheme for conservatorships and receiverships for insured financial institutions. Hindes v. FDIC, 137 F.3d 148, 159 (3d Cir. 1998).

mandated by 12 U.S.C. § 1821(d) of FIRREA. After the FDIC had completed its administrative review and denied the administrative claim, Dittmer asked for leave[4] to file a second amended complaint, and the FDIC renewed its motion to dismiss. In September 2011, while the renewed motion to dismiss was pending, Dittmer filed another suit in Missouri state court, which included the same claims as the first case, but included all of the various Dittmer successors as plaintiffs, and both the FDIC and Richards as defendants. The FDIC likewise removed the second case and it was assigned to a different federal district court judge. In November 2011, the FDIC moved to substitute CADC/RADC Venture 2011-1, L.L.C. (CADC) for itself in both cases, because it sold the Barkley note to CADC. This motion was granted by the district court in the second case, and shortly thereafter, in December 2011, the second case was transferred to the same district court judge as the first case. In January 2012, the district court granted the motion to dismiss with regard to the first case, finding that the anti-injunction provisions in FIRREA, 12 U.S.C. § 1821(j), precluded Dittmer's requests for injunctive and declaratory relief, and that because Peters was authorized as the managing general partner to enter into the loan transaction, the partnership suffered no redressable injury and lacked standing. The district court remanded any possible claims against Richards to state court. The district court then dismissed the second case on res judicata grounds. Dittmer appeals.

---

[4]We note that the district court did not actually allow Dittmer to file its second amended complaint. It did not deny leave, it simply waited until the final order and denied the motion for leave to amend as moot. However, out of an abundance of caution, we refer to the claims in this second amended complaint, noting that the district court did the same in its final order.

## II.    DISCUSSION

We review the district court's dismissal of a case pursuant to Rule 12(b) de novo.  Bueford v. Resolution Trust Corp., 991 F.2d 481, 484 (8th Cir. 1993) (reviewing de novo a Rule 12(b)(1) motion for lack of subject matter jurisdiction pursuant to FIRREA); Illig v. Union Elec. Co., 652 F.3d 971, 976 (8th Cir. 2011) (Rule 12(b)6)).

### A.    FIRREA

The FDIC alleged in its Rule 12(b)(1) motion that the district court did not have subject matter jurisdiction over the requests for injunctive relief due to the operation of the anti-injunction provisions in FIRREA.  In its capacity as receiver of a failed institution, the FDIC is shielded from judicial action that restrains or affects the exercise of its powers as receiver.  The anti-injunction provisions in FIRREA state: "Except as provided in this section, no court may take any action, except at the request of the Board of Directors by regulation or order, to restrain or affect the exercise of powers or functions of the Corporation as a conservator or a receiver."  12 U.S.C. § 1821(j).  This section has been construed broadly to constrain the court's equitable powers.  Hanson v. FDIC, 113 F.3d 866, 871 (8th Cir. 1997).

Part of the relief Dittmer seeks in its complaint–that the original note be declared void as to Dittmer, and that the bank be enjoined from selling the subject property–are requests for injunctive relief that would normally be barred by § 1821(j). Tri-State Hotels, Inc. v. FDIC, 79 F.3d 707, 715 (8th Cir. 1996).  However, Dittmer points out that the FDIC is no longer the holder of the note because it sold the note to CADC.[5]  Dittmer argues that CADC does not receive the same protections from the

---

[5]The FDIC remains a party in one of these two cases, it seems, because the district court simply did not rule on the FDIC's motion to substitute CADC before the court dismissed the suit pursuant to Rule 12(b).  As best we can tell, everyone agrees

anti-injunction provisions of § 1821(j) as does the FDIC. On the other hand, the FDIC argues that the transfer of the note to CADC does not render § 1821 moot or meaningless because the transfer was an exercise of its statutory powers, set forth in § 1821(d) and protected by § 1821(j), and any declaration that the note was void as against the original signer would unduly restrain its powers as receiver.

Accordingly, we believe we must determine whether Dittmer's lawsuit "restrain[s] or affect[s]" the FDIC's powers as receiver, even though the FDIC has already disposed of the asset in question. We have not had the occasion to construe the effect of § 1821(j) when the receiver has disposed of an asset to a remote third-party purchaser. Other circuits have held that the inquiry is two-fold: the court must first determine whether the challenged action is within the receiver's power or function; if so, it then determines whether the action requested would indeed "restrain or affect" those powers. Bank of Am. Nat'l Ass'n v. Colonial Bank, 604 F.3d 1239, 1243 (11th Cir. 2010). Here, the challenged action–enforcing the note against the signers and the ability to sell the mortgaged property–is unquestionably within the receiver's duties and powers. See 12 U.S.C. § 1821(d)(2)(A) & (E) (setting forth the duties of the FDIC as receiver of a failed bank, including that it succeeds to the assets of the institution, and may place the institution in liquidation and "realize upon the assets of the institution").

Next, we look to whether the challenged action would indeed "restrain or affect" the FDIC's receivership powers. Colonial Bank, 604 F.3d at 1243. Dittmer asked the court to declare the original note void as to Dittmer. Even though the FDIC has apparently already sold the note in question, if plaintiffs such as Dittmer are allowed to attack the validity of a failed institution's assets by suing the remote purchaser, such actions would certainly restrain or affect the FDIC's powers to deal

_____

that the FDIC has, indeed, conveyed this note to CADC for valid consideration. Because of the outcome of our analysis, it does not matter whether the FDIC, CADC, or both, are the named parties in the suits.

with the property it is charged with disbursing. "[A]n action can 'affect' the exercise of powers by an agency without being aimed directly at [the agency]." Hindes v. FDIC, 137 F.3d 148, 160 (3d Cir. 1998). In Hindes, the Third Circuit held that the protections afforded to receivers in § 1821(j) extend to third parties. In rejecting the argument that § 1821(j) does not apply to a non-FDIC third party, the court stated, "the statute, by its terms, can preclude relief even against a third party, including the FDIC in its corporate capacity, where the result is such that the relief 'restrain[s] or affect[s] the exercise of powers or functions of the [FDIC] as a conservator or a receiver.'" Id. (alterations in original) (quoting 12 U.S.C. § 1821(j)). Cf. Telematics Int'l, Inc. v. NEMLC Leasing Corp., 967 F.2d 703, 707 (1st Cir. 1992) (holding that § 1821(j) applied to bar a claim seeking to attach a lien to a certificate of deposit in which the FDIC had a security interest because the attachment would ultimately have an effect upon the FDIC's exercise of its powers as receiver).

We agree with the reasoning in Hindes and find that Dittmer's request for injunctive relief is barred by § 1821(j), even though the FDIC is no longer the holder of the note, because the relief requested–a declaration that the note is void as to Dittmer–affects the FDIC's ability to function as receiver in the case. The "disposition of a failed [bank's] assets . . . is one of the quintessential statutory powers of the [FDIC] as a receiver." Pyramid Constr. Co. v. Wind River Petroleum, Inc., 866 F. Supp. 513, 517 (D. Utah 1994). If an asset sold to a third-party purchaser is subject to dilution in a later judicial proceeding, there would be a substantial chilling effect upon the receiver's ability to perform its statutory functions. In Pyramid, the court rejected the argument that § 1821(j) did not apply because a plaintiff sought relief against the receiver's successor. The plaintiff's argument in Pyramid sounded much like Dittmer's here–because the receiver had already liquidated the subject property and realized the profits therefrom, the receiver had no remaining interest in the property. Id. at 518. The Pyramid court disagreed, finding that the plain language of the statute reflected Congress's intent to prohibit any interference, direct or indirect, with the functions of the receiver. Id. And, like Dittmer's lawsuit, the Pyramid court found that the plaintiff's suit would have the effect of rescinding the transfer of

-8-

property from the receiver to the purchasing company, a move that "would undoubtedly 'restrain or affect' the [receiver] in the performance of its statutory duties." Id. at 519.

Other lower courts are in accord with the reasoning of Hindes and Pyramid. See, e.g., Hoxeng v. Topeka Broadcomm, Inc., 911 F. Supp. 1323, 1334-35 (D. Kan. 1996) (holding that the FDIC's agent could assert § 1821(j) to bar a claim for specific performance even when the FDIC was not, and could not have been, a party to the case); Furgatch v. Resolution Trust Corp., No. 93-20304, 1993 WL 149084, at *2 (N.D. Cal. April 30, 1993) (unpublished) (holding that § 1821(j) barred a claim to enjoin a bank and its trustee from conducting a foreclosure sale because "enjoining these parties indirectly enjoins [the receiver], which a district court has no power to do").

Of the many cases Dittmer cites in support of its argument that the protections of § 1821(j) end when the receiver transfers or distributes an asset at issue, the closest one purportedly on point is Henrichs v. Valley View Development, 474 F.3d 609 (9th Cir. 2007). However, that case still misses the mark. Henrichs involved a rather convoluted land deal gone awry. The underlying dispute was over two tracts of land that could not be sold separately because there was no recorded tract map delineating the boundaries of the tracts. A limited partnership desired to buy one of the tracts, and, anticipating a delay in the ability to obtain an approved, recorded tract map, the partnership bought both tracts. However, the buyer leased the second tract back to the seller and gave the seller the option to buy back the second tract for $1, free of all liens and encumbrances, once the tract map was recorded. The seller exercised the option once the tract map was recorded, but in the meantime, both of the tracts were encumbered by a mortgage, unbeknownst to the seller. Ultimately, the bank that made the mortgage loan failed, and shortly thereafter, the partnership defaulted on the loan. Pursuant to FIRREA, the FDIC became the bank's receiver and acquired the bad loan. When the seller realized that the second tract was encumbered by a lien a few years later, it sued the members of the limited partnership in California state court to quiet

title. The seller successfully quieted title in the second tract. Unhappy with this result, one of the limited partners sued the original seller in federal court, in relevant part asking the federal court to "void" the state court quiet title judgment. The district court dismissed this claim on Rooker-Feldman[6] grounds. On appeal, seeking to avoid the Rooker-Feldman bar, the partner asserted that the state court never properly had jurisdiction over the quiet title suit because FIRREA vested exclusive jurisdiction in the federal courts over the claim.

The Henrichs court rejected the exclusive jurisdiction argument, noting that FIRREA's jurisdictional bars in § 1821(d) and (j)[7] were "not applicable" because the FDIC was not a party to the state court quiet title litigation instigated by the seller against the original purchasers of the tracts of land. 474 F.3d at 614. Seizing upon this "not applicable" language, Dittmer argues that Henrichs stands for the proposition that the jurisdictional bar in § 1821(j) is not operable once the FDIC has conveyed receivership property to a third-party purchaser. However, we find that the rather elaborate factual scenario in Henrichs is distinguishable from the transactions at issue here. First, the FDIC *was* a party in one of these cases, and remains a party in the first case. And, in Henrichs, the subject matter of the underlying state court litigation was the title to the second tract of land, not the note formerly held by the FDIC. Id. Here,

---

[6]This is the doctrine that prevents a losing state court party from seeking what in substance would be appellate review of the state court judgment in federal court, based upon District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983) and Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923).

[7]Section 1821(d) and § 1821(j) both contain jurisdictional bars to judicial review. Subsection (d) is the section of FIRREA that, in addition to setting forth the rights and duties of the receiver, provides for mandatory administrative review and the exhaustion of claims with the FDIC before judicial review. 12 U.S.C. § 1821(d)(3)-(13). Subsection (j), of course, contains the anti-injunction provision at play here. Although (d) is not directly implicated here because administrative exhaustion has occurred, many of the cases discuss both (d) and (j) in the context of the jurisdictional bars present in FIRREA.

the subject of the litigation is and always has been Dittmer's attempts to avoid its obligations on the original note from Premier to Barkley. That the FDIC succeeded to title of the note (and ultimately sold it to a willing buyer) in its role as the bank's receiver is of the utmost relevance. Indeed, the Ninth Circuit itself recognized the distinction between the situation in Henrichs and a situation where the subject of the underlying lawsuit relates to the act or omission of a failed banking institution. See Benson v. JPMorgan Chase Bank, N.A., 673 F.3d 1207, 1213 (9th Cir. 2012) ("[N]othing in Henrichs suggests that the quiet title action could have been related to the acts or omissions of a failed bank or the FDIC."). Accordingly, Henrichs is distinguishable.

Dittmer also argues that its claim deals with *assets* rather than the *functions* of the FDIC in its capacity as receiver, and, therefore, the provisions of § 1821(j) are inapposite, citing Tri-State Hotels, 79 F.3d 707. Tri-State involved an investor who had entered into agreements with various banks to purchase and finance distressed hotel properties. The banks allegedly promised to provide further financing when needed, and agreed to limit the investor's liability in the event of default. Ultimately, one of the banks stopped providing financing to the investor, and the FDIC was appointed receiver when the bank failed. The investor brought suit against the FDIC, the banks, and several bank officers, asking for rescission of the purchase agreement and loan documents, and for declaratory relief with respect to those same documents. A few months later, and while the investor's action was still pending, the FDIC in turn sued the investor for defaulting on the note. Pursuant to FIRREA, the district court dismissed the investor's claims against the FDIC. The investor had not submitted its claims through the administrative process pursuant to § 1821(d), and the investor argued on appeal that it was not required to do so. We disagreed and found that the exhaustion requirements of § 1821(d) and the anti-injunction provision in § 1821(j) barred the investor's claim against the FDIC, and further rejected the argument that the investor's inability to obtain declaratory and rescissory relief in its lawsuit would render the investor "defenseless" in the FDIC's lawsuit. Tri-State, 79 F.3d at 714-15.

Regarding the "defenseless" argument, we noted that because the suit by the FDIC was *against* the investor, the investor's affirmative defenses would not be subject to the exhaustion requirements of § 1821(d), as they would be responses, not claims or actions, against the FDIC. Id. at 715 & n.13. The language of FIRREA precludes "claim[s]" against or "action[s] seeking a determination of rights" *against a receiver* without first submitting the claim for administrative review. 12 U.S.C. § 1821(d)(13)(D). After this review has occurred, or if it is the FDIC bringing the claim, the jurisdictional bars in § 1821(d) are no longer in play. In discussing the reach of subsection (d), we noted, "when the FDIC has completed its administrative review, and has chosen a judicial forum in which to prosecute its rights, the policy of avoiding unnecessary litigation is no longer applicable, and the party's Due Process rights to defend the claims in the FDIC's lawsuit become paramount." Tri-State, 79 F.3d at 715 n.13.

Attempting to apply this reasoning to § 1821(j) and this case, Dittmer argues that Tri-State stands for the proposition that so long as the exhaustion requirements of § 1821(d) are satisfied, the anti-injunction provisions of § 1821(j) are not implicated. We do not think this quote from Tri-State bears the weight that Dittmer asks us to place upon it. Tri-State simply stands for the unremarkable proposition that claims must be exhausted in front of the FDIC pursuant to § 1821(d) before there can be judicial review of those claims, and that if the FDIC or other receiver chooses to bring suit, the defendant in that suit may properly assert an affirmative defense untethered to the jurisdictional bar in § 1821(d). 79 F.3d at 714-15. Footnote 13 from Tri-State, upon which Dittmer relies, does not discuss or even contemplate the anti-injunction jurisdictional bar of § 1821(j). Id. at 715 n.13. Accordingly, we find that under 12 U.S.C. § 1821(j), the district court correctly dismissed Dittmer's claims for injunctive and declaratory relief.

## B.    Common Law Claims

In the second amended complaint, Dittmer also alleged violations of the bank's common law duties to make a commercially reasonable loan and exercise ordinary care.  Dittmer also asserted that the bank converted funds and was unjustly enriched when it used the proceeds of the loan to pay off another of Peters' loans held by the bank.  Against Richards, Dittmer requested a money judgment in the amount of $2,550,000.  Because Dittmer requested money judgments reimbursing it for its share of any payments made on the note, prejudgment interest, costs and attorney fees, presumably based upon these common law theories, these claims are not barred by the anti-injunction provision of § 1821(j).  The district court nonetheless dismissed the claims against the FDIC, finding that the partnership suffered no injury and that Dittmer therefore lacked standing.  The court remanded the claims against Richards to state court.  On appeal, Dittmer argues that the district court tested the adequacy of the answer, not the complaint; that it wrongly decided factual issues on a Rule 12(b)(6) motion, including Peters' alleged authority to act; that it wrongly considered matters outside of the pleadings; and that it erred in finding that Dittmer was not injured, and therefore lacked standing, when the proceeds were paid to Cedar Creek.

In deciding the motion to dismiss, the district court expressly noted that it was considering the documents attached to the answer filed in state court by Premier Bank, before the case was removed and before the FDIC was involved, including the amended partnership agreement, the POA, and the fax from Joe Dittmer to Premier Bank.  As is required by statute, all of these documents comprising the record in the state court were attached to the notice of removal.  See 28 U.S.C. § 1446(a).

In adjudicating Rule 12(b) motions, courts are not strictly limited to the four corners of complaints.  Outdoor Cent., Inc. v. GreatLodge.com, Inc., 643 F.3d 1115, 1120 (8th Cir. 2011).  As we recently stated,

> [w]hile courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned;' without converting the motion into one for summary judgment.

Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed. 2004)). Following Miller, we find the district court properly considered the amended partnership agreement and POA[8] because they were contemplated by or expressly mentioned in the complaint. There is no allegation that the amended partnership agreement or POA were inaccurate or fabricated. Instead, Dittmer argues that the district court should not have considered these extraneous documents on the motion to dismiss, or that the court should have given notice that it was considering them and converting the motion to one for summary judgment. See BJC Health Sys. v. Columbia Cas. Co., 348 F.3d 685, 688 (8th Cir. 2003) (holding that district court should not have considered documents not contemplated by the

---

[8]The fax from Joe Dittmer to the bank is a closer call as this document is not mentioned, directly or by inference, in the complaint. However, we find that the judgment in favor of the FDIC is proper on the basis of Missouri law, the partnership agreement and the POA documents alone. And if the district court did err in considering the fax without giving notice to the parties that it was considering matters outside of the pleadings, we find that any such error was harmless. See Gibb v. Scott, 958 F.2d 814, 816 (8th Cir. 1992) ("A failure [to give notice] is harmless if the nonmoving party had an adequate opportunity to respond to the motion and material facts were neither disputed nor missing from the record."). Dittmer not only had a chance to respond to the motion to dismiss and address the fax, but in making arguments about the lack of Peters' apparent authority, pointed out that the bank president solicited the fax from Joe Dittmer. Dittmer's App. at 160. Also, given that this is a removed case that had a vigorous motion practice history in state court before removal, there is very little possibility that Dittmer was blind sided by a document in the removal record.

pleadings on the Rule 12(b)(6) motion, and the lack of notice that it was doing so was not harmless error). Because these two documents are referred to either directly (the POA) or by inference (the amended partnership agreement) in the complaint and their authenticity is not questioned, we find that the district court appropriately considered them in ruling on the motion to dismiss. Mattes v. ABC Plastics, Inc., 323 F.3d 695, 697 n.4 (8th Cir. 2003).

Given that the partnership and POA documents were properly considered, we turn to the question of whether the district court properly dismissed the claims against the FDIC. The Missouri Uniform Partnership Act states:

> Every partner is an agent of the partnership for the purpose of its business, and the act of every partner, including the execution in the partnership name of any instrument, for apparently carrying on in the usual way the business of the partnership of which he is a member binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

Mo. Rev. Stat. § 358.090(1). This language indicates that Peters' conduct in taking out the loan and directing the proceeds effectively legally bound the partnership in relation to the lending bank. Further, the amended partnership agreement and the POA refute any notion that Peters had "in fact no authority to act for the partnership in the particular matter." Id. Given the language of the Missouri Uniform Partnership Act, the amended partnership agreement and the POA documents, the district court correctly dismissed[9] the claim against the FDIC.

---

[9]We do not agree with the district court's verbiage that "[b]ecause there was no injury to the partnership, the Court finds that plaintiff has no standing." Dittmer's App. at 347. Rather, we find that because Dittmer cannot state a claim for which relief may be granted based upon the conduct of the lending bank, the Rule 12(b)(6) motion was properly granted. See McCrary v. Stifel, Nicolaus & Co., Inc., 687 F.3d 1052, 1058 (8th Cir. 2012) (noting that we may affirm the district court on any basis

-15-

## C.    Res Judicata

The district court concluded that the doctrine of res judicata required dismissal of the second case, which was filed in September 2011.  There is no credible argument that this is not the same case, or that these parties are not in privity with one another.  Dittmer alleges in the state court petition that it is in privity with the other parties, and also alleges in the petition that the two cases have the "same claims."  At oral argument, counsel explained that the second lawsuit was filed "protectively" in the event that the motion to substitute parties was not granted.  And, on appeal, Dittmer's arguments with regard to the propriety of the res judicata ruling again relate to the district court's alleged failure to timely rule on the motion to substitute and add parties plaintiff.  Examining the record, we find that all of the parties related to Dittmer had the opportunity to, and did, litigate this same action against the bank, the FDIC, and CADC.  These same entities are still litigating the remanded state law claims against Richards in state court.  Therefore, we agree with the district court's res judicata ruling.  See Rutherford v. Kessel, 560 F.3d 874, 881 (8th Cir. 2009) (holding that the doctrine of res judicata barred successive lawsuits by siblings asserting the same claims because "[t]he doctrine of res judicata bars both parties and their privies from relitigating an issue already decided").

## III.    CONCLUSION

The essence of this somewhat convoluted case is a dispute, not between the original partners, but between the partners' respective successors.  Dittmer's state law claims against Richards, as Peters' successor, have been remanded to state court,

___

that is supported by the record).  To the extent that the partnership may have been injured by the conduct of Peters, any possible claims against Richards were remanded to state court for further proceedings.

-16-

where the dispute will, hopefully, be finally settled.  We affirm the judgment of the district court.[10]

_____

[10]We deny CADC's motion to dismiss the appeal, and dismiss Appellants' motion to amend the statement of issues as moot.

-17-