# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3315

_____

Herschel Zarecor and Mona Zarecor, Individually and on behalf of their IRAs;
Herschel Zarecor, III, Individually and on behalf of his IRA,

*Plaintiffs - Appellants*,

v.

Morgan Keegan & Company, Inc.,

*Defendant - Appellee.*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Little Rock

_____

Submitted: December 9, 2014
Filed: September 1, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Herschel and Mona Zarecor and their son Herschel Zarecor III brought Arkansas, New Jersey, and federal securities fraud claims against Morgan Keegan & Company, Inc. The Zarecors alleged that they relied on misrepresentations made by Morgan Keegan, and misrepresentations by others that Morgan Keegan prepared, influenced, or approved, in purchasing securities that caused them substantial losses.

The district court granted Morgan Keegan's motion to dismiss all claims as time-barred, and denied the Zarecors leave to amend the complaint after judgment. We affirm the dismissal of the Zarecors' claims under Arkansas law and federal law, but conclude that the claim under New Jersey law was timely filed under the law of that jurisdiction as best we can predict it. We therefore affirm in part and reverse in part.

I.

We recite the facts according to the amended complaint and matters of public record cited by the parties. *See Dittmer Props., L.P. v. Fed. Deposit Ins. Corp.*, 708 F.3d 1011, 1021 (8th Cir. 2013). The Zarecors invested nearly $800,000, including reinvested dividends and distributions, in the RMK Advantage Income Fund, the RMK Strategic Income Fund, and the RMK Multi-Sector High Income Fund (collectively, the RMK Funds) to secure their retirement. Morgan Keegan was the lead underwriter for the RMK Funds and was heavily involved in the operations of the Funds.

The Zarecors allege that Morgan Keegan omitted facts regarding the dividend policies and the structure of the RMK Funds and misrepresented the quality of the RMK Funds in conversations with Herschel Zarecor. According to the Zarecors, Morgan Keegan also "was intimately involved with" misrepresentations and omissions regarding securities that the RMK Funds made in filings with the Securities and Exchange Commission, prospectuses, and other marketing materials. The Zarecors allege that Morgan Keegan prepared key sections of the documents, and approved the S.E.C. filings and marketing materials. For instance, the Zarecors allege that although the RMK Funds' public filings promised that some of the assets held by the Funds would be evaluated independently and in good faith, Morgan Keegan and a fund manager unilaterally set the prices for the assets. This unilateral action allegedly manipulated the share prices of the RMK Funds.

Relying on these alleged misrepresentations, the Zarecors invested most of their retirement savings in the RMK Funds. When the Funds collapsed in 2007, the Zarecors lost $718,577, close to ninety percent of their total investment.

Some history of litigation involving the RMK Funds is relevant to whether the Zarecors timely filed their claims in this action. On December 21, 2007, plaintiffs unrelated to the Zarecors filed a class action against Morgan Keegan and other defendants in the United States District Court for the Western District of Tennessee. According to an order in the case cited by the Zarecors, the district court consolidated two pending suits, and the plaintiffs filed a consolidated amended complaint in February 2011. The plaintiffs sued on behalf of a class of individuals and entities that purchased securities of four mutual funds, including the RMK Funds at issue in this case.

The class action plaintiffs claimed that Morgan Keegan was liable as a "controlling person" under § 20(a) of the Securities Exchange Act of 1934, 15 U.S.C. § 78t(a), for violations of § 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and S.E.C. Rule 10b-5, 17 C.F.R. § 240.10b-5, that were committed by other defendants, including the RMK Funds, over whom Morgan Keegan exercised control. The plaintiffs also alleged that Morgan Keegan violated §§ 11 and 12(a)(2) of the Securities Act of 1933. 15 U.S.C. §§ 77k, 77l. The Zarecors were part of the putative class because they purchased securities of three of the four funds at issue. The parties agree that the Zarecors opted out of the class at some point. The class action eventually was resolved by settlement.

On July 27, 2009, the Zarecors filed a statement of claim in arbitration with the Financial Industry Regulatory Authority (FINRA), alleging that Morgan Keegan had violated New Jersey securities law, N.J. Stat. Ann. § 49:3-71(a)(2)-(4), and Arkansas securities law, Ark. Code § 23-42-106 (1999). Herschel and Mona Zarecor are citizens of Arkansas, while Herschel Zarecor III is a citizen of New Jersey. On

August 12, 2010, the Zarecors amended their claim to include an alleged violation of § 10(b) of the Exchange Act and Rule 10b-5. *Zarecor v. Morgan Keegan & Co.*, No. 4:10CV01643 SWW, 2011 WL 5592861, at *1 n.2 (E.D. Ark. July 29, 2011). The FINRA arbitration panel awarded the Zarecors $541,000 on October 27, 2010, but a district court later vacated the award, holding that the dispute was not subject to arbitration under FINRA rules. *Id.* at *2, *6. The court denied the Zarecors' motion for reconsideration on November 10, 2011. *Zarecor v. Morgan Keegan & Co.*, No. 4:10CV01643 SWW, 2011 WL 5508860, at *4 (E.D. Ark. Nov. 10, 2011).

The Zarecors filed the current action a week later, on November 17, 2011. They alleged that Morgan Keegan is liable to Herschel and Mona Zarecor as a broker dealer under Arkansas securities law, Ark. Code § 23-42-106(c) (1999), and to Herschel Zarecor III under New Jersey securities law. N.J. Stat. Ann. § 49:3-71(d). In August 2013, the Zarecors moved for leave to file an amended complaint and attached the amended complaint. The proposed amendment added factual allegations and a claim that Morgan Keegan violated § 10(b) and Rule 10b-5 by making material false statements and omissions and by manipulating the price of assets. The proposed amendment also altered the claims under Arkansas and New Jersey law to assert that Morgan Keegan was liable not only as a broker dealer, as the first complaint had asserted, but also as a control person.

Morgan Keegan opposed leave to amend, but moved to dismiss all claims, including those in the proposed amendment. The district court granted leave to amend and dismissed all claims as time-barred. The Zarecors then moved under Federal Rules of Civil Procedure 59(e) and 60(b) for post-judgment leave to amend the complaint a second time. The Zarecors sought to include a claim for control-person liability under § 20(a) of the Exchange Act, but the court denied the motion based on undue delay.

II.

The Zarecors appeal the district court's dismissal of their claims as time-barred. They argue that the statutes of limitations governing their claims are each subject to a discovery rule providing that the limitations period does not begin until they could have discovered the fraud. With the benefit of a discovery rule, the Zarecors argue, the claims were timely filed. The Zarecors also contend that the FINRA arbitration and the 2007 class action tolled the statutes of limitations and rendered this action timely. We review the district court's ruling *de novo*, *Bradley Timberland Res. v. Bradley Lumber Co.*, 712 F.3d 401, 406 (8th Cir. 2013), considering the complaint itself and matters of public record that are capable of judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Dittmer Props., L.P.*, 708 F.3d at 1021.

The Zarecors bring three different securities fraud claims that arise under the laws of Arkansas, New Jersey, and the United States, respectively. The parties agree with the district court that the law of each respective jurisdiction governing the timeliness of claims applies to the claims arising under the laws of that jurisdiction. Accordingly, the parties have waived any objection to the district court's choice of law, and we will decide the appeal on the same basis. *See Kostelec v. State Farm Fire & Cas. Co.*, 64 F.3d 1220, 1224 (8th Cir. 1995).

A.

The Zarecors' claim under § 10(b) of the Securities Exchange Act, 15 U.S.C. § 78j(b), is timely if it was filed no later than two years "after the discovery of the facts constituting the violation." 28 U.S.C. § 1658(b)(1). Under the federal discovery rule, the statute of limitations begins to run when a plaintiff actually discovers, or "a reasonably diligent plaintiff would have discovered, the facts constituting the violation." *Merck & Co. v. Reynolds*, 559 U.S. 633, 637 (2010) (internal quotation

marks omitted). The facts constituting the violation include *scienter*, or "that a defendant made a material misstatement *with an intent to deceive*." *Id.* at 648-49. The limitations period does not begin to run when a plaintiff is put merely on "inquiry notice," or when there are "storm warnings," such that "the facts would have prompted a reasonably diligent plaintiff to *begin* investigating." *Id.* at 653 (emphasis added) (internal quotation marks omitted). Instead, the statute of limitations is triggered when the reasonably diligent plaintiff would have discovered "the facts constituting the violation" after an appropriate investigation. *Id.* (internal quotation marks omitted); *see Pension Tr. Fund v. Mortg. Asset Securitization Transactions, Inc.*, 730 F.3d 263, 272-73, 276-79 (3d Cir. 2013).

We conclude that by the end of 2007, a reasonably diligent plaintiff would have begun investigating the decline in value of the RMK Funds. By that time, the Zarecors had lost most of their investment in the Funds, and a class action complaint had been filed alleging that Morgan Keegan was liable for securities fraud in connection with at least one of the RMK Funds. A reasonably diligent plaintiff who had purchased securities in the RMK Funds would have noticed that complaint, and begun to inquire whether Morgan Keegan was at fault for the substantial decline in value of the Zarecors' assets. *Id.* at 278.

We need not pinpoint exactly when a reasonably diligent plaintiff would have then discovered "the facts constituting the violation" under the federal discovery rule. By July 2009, the Zarecors filed a statement of claim in arbitration with the Financial Industry Regulatory Authority alleging that Morgan Keegan did not disclose the risky structure of the securities and "misrepresented hundreds of millions of dollars of asset-backed securities as being corporate bonds and preferred stocks." These alleged clear and material misrepresentations of the structure and quality of securities are sufficient to show facts constituting the violation alleged in this action, including an intent to deceive. *Cf. Merck*, 559 U.S. at 649-50. Yet the Zarecors did not bring suit

on their federal claim until more than two years later, in November 2011. By then, the two-year statute of limitations had expired.

The Zarecors contend, however, that the 2007 class action tolled the statute of limitations for their federal securities fraud claim under the rule of *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974). *American Pipe* held that where a class action is not certified because the proposed class is not sufficiently numerous, "the commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." *Id.* at 553-54; *see Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 349-50 (1983). The district court ruled that the Zarecors' claims were not tolled pursuant to *American Pipe* because the doctrine tolls a statute of limitations only for claims that are identical to those asserted in a class action, and the Zarecors' claims were different from those pleaded in the 2007 class action. The Zarecors contend that *American Pipe* tolling should apply because the claims they pleaded, although different causes of action, were based on the same factual information that underlay the class action complaint.

In *American Pipe*, the Supreme Court concluded that a class action tolls statutes of limitations "as to all asserted members of the class." 414 U.S. at 554. The Court reasoned that restricting the tolling doctrine to those class members who filed motions to intervene "would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure" by encouraging "needless duplication of motions." *Id.* at 553-54. The Court also explained that the purposes of a statute of limitations are to "ensur[e] essential fairness to defendants" and to bar plaintiffs who have "slept on [their] rights." *Id.* at 554-55 (internal quotation mark omitted). Tolling a statute of limitations for all class members did not frustrate these purposes, because the action "notifie[d] the defendants . . . of the substantive claims" as well as "the number and generic identities of the potential plaintiffs." *Id.*; *see Crown, Cork & Seal Co.*, 462 U.S. at 352-53. This court has said

-7-

that whether a plaintiff's participation in a class action ends with a decision to opt out rather than with denial of class certification "is irrelevant to the applicability of the *American Pipe* rule." *Adams Pub. Sch. Dist. v. Asbestos Corp.*, 7 F.3d 717, 718 n.1 (8th Cir. 1993).

We conclude, however, that *American Pipe* tolling should be limited to claims filed in a later action that are the same as those pleaded in the putative class action. As the Supreme Court later observed, "the tolling effect given to the timely prior filings in *American Pipe* . . . depended heavily on the fact that those filings involved exactly the same cause of action subsequently asserted." *Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 467 (1975). A broader rule would not enhance the "efficiency and economy" of Rule 23 class actions. The Supreme Court's concern was that without tolling, putative class members would needlessly bring motions to intervene or a multiplicity of actions raising identical claims. *Crown, Cork & Seal*, 462 U.S. at 350-51; *American Pipe*, 414 U.S. at 553-54. But where a putative class member wishes to pursue a claim that is outside the scope of the class action, his separate timely lawsuit is not "needless," because the class action would not prosecute his different claim. A class action also does not notify defendants of substantive claims that are different from those pleaded in the action, so tolling of the time limits applicable to those different claims does not safeguard "essential fairness to defendants." *American Pipe*, 414 U.S. at 553-55; *see Johnson*, 421 U.S. at 467 & n.14. Because the federal claim brought by the Zarecors against Morgan Keegan is different from the claims that were alleged in the 2007 class action, *American Pipe* tolling does not apply. *Accord Williams v. Boeing Co.*, 517 F.3d 1120, 1136 (9th Cir. 2008); *Raie v. Cheminova, Inc.*, 336 F.3d 1278, 1283 (11th Cir. 2003) (per curiam); *Cullen v. Margiotta*, 811 F.2d 698, 734-36 (2d Cir. 1987) (Meskill, J., dissenting); *cf. In re Copper Antitrust Litig.*, 436 F.3d 782, 794 (7th Cir. 2006).

The Zarecors also contend that the federal statute of limitations was tolled from the time they filed the FINRA arbitration on July 27, 2009, until the district court

denied the Zarecors' motion for reconsideration of its decision to vacate the arbitral award on November 10, 2011. They rely on a provision of former FINRA Rule 12206(c), then applicable, that "where permitted by applicable law, when a claimant files a statement of claim in arbitration, any time limits for the filing of the claim in court will be tolled while FINRA retains jurisdiction of the claim." Morgan Keegan responds that FINRA never "retain[ed] jurisdiction of the claim" under Rule 12206(c), because a district court later ruled that the dispute was not arbitrable, *see Zarecor*, 2011 WL 5592861, at *6, and because "applicable law" did not permit tolling while an arbitral proceeding was pending.

We conclude that pursuit of arbitration did not toll the federal statute of limitations. Although the Supreme Court has applied tolling under a different federal statute when a plaintiff initially brought suit in a state court where venue was improper, *Burnett v. N.Y. Cent. R.R. Co.*, 380 U.S. 424, 428-32 (1965), arbitration is different. A plaintiff who pursues arbitration is not required to await the outcome to bring an action in court, and there is an accepted procedure for pursuing arbitration and a lawsuit simultaneously. As the Fifth Circuit observed in an analogous situation, a plaintiff may file suit within the statute of limitations and then seek a stay of the action pending arbitration: "Such a course would have guaranteed that the lawsuit was brought within the limitations period without waiving any right to arbitration which may have existed." *Fonseca v. USG Ins. Servs.*, 467 F. App'x 260, 261 (5th Cir. 2012). The First Circuit similarly explained that there is a means to give procedural priority to arbitration without foreclosing a plaintiff's right to bring a timely action in court—"the bringing of suit within the limitations period, followed by a stay of such proceedings pending the results of arbitration." *United States ex. rel. Wrecking Corp. of Am. v. Edward R. Marden Corp.*, 406 F.2d 525, 526 (1st Cir. 1969) (per curiam). We believe that this reasoning is sound and should be applied in the context of the federal securities statutes. The district court thus properly dismissed the Zarecors' federal claim as time-barred.

B.

The Zarecors next contend that they timely filed their claim alleging securities fraud under New Jersey law. That claim was time-barred "two years after the time when the person aggrieved knew or should have known of the existence of his cause of action." N.J. Stat. Ann. § 49:3-71(g). The New Jersey statute of limitations begins to run when the plaintiff "discovers, or by an exercise of reasonable diligence and intelligence should have discovered that he may have a basis for an actionable claim." *Martinez v. Cooper Hosp.-Univ. Med. Ctr.*, 747 A.2d 266, 270 (N.J. 2000) (internal quotation mark omitted); *see Henry v. N.J. Dep't of Human Servs.*, 9 A.3d 882, 891-92 (N.J. 2010). Discovery of the basis for an actionable claim does not require "knowledge of a specific basis for legal liability or a provable cause of action." *Martinez*, 747 A.2d at 270. Rather, the statute of limitations begins to run when a plaintiff should have knowledge of injury and "that the injury is attributable to the fault of another." *Henry*, 9 A.3d at 892 (internal quotation mark omitted).

We conclude that the Zarecors should have discovered their injury by late 2007, when their investment in the RMK funds had collapsed in value and other parties had sued Morgan Keegan in a putative class action. The magnitude of the Zarecors' losses would have prompted a reasonably diligent and intelligent plaintiff to investigate. An investigation would have revealed the class action complaint filed on December 21, 2007, alleging that Morgan Keegan was liable for securities fraud in connection with at least one of the RMK Funds. At that time, the Zarecors should have discovered not only that they were injured, but also "that the injury is attributable to the fault of another." *Henry*, 9 A.3d at 892 (internal quotation mark omitted). The statute of limitations therefore began to run in December 2007.

The two-year statute of limitations would have expired in December 2009 unless it was tolled by the arbitration proceeding that was filed in July 2009 or for some other reason. Although we have concluded that the arbitration did not toll the

federal statute of limitations, we must acknowledge that New Jersey law is very generous to a plaintiff who pursues his claim in the wrong forum. In *Galligan v. Westfield Centre Service, Inc.*, 412 A.2d 122 (N.J. 1980), the Supreme Court of New Jersey held that a two-year statute of limitations for personal injury actions was equitably tolled when the plaintiff sued in a federal court that lacked subject matter jurisdiction before refiling the same claim in state court twenty-two days after the limitations period expired. The court reasoned that "a mistake in the selection of a court having questionable or defective jurisdiction should not defeat tolling of the statute when all other purposes of the statute of limitations have been satisfied." *Id.* at 124. Because the plaintiff exhibited diligence by pursuing his claim (albeit in the wrong forum), the defendant received timely notice that it could be required to defend against the claim (albeit through the unconventional vehicle of a deficient complaint), and the defendant was not prejudiced by "the mere lapse of 22 days" after the statute of limitations expired, the court held that the action in state court was timely commenced. *Id.* at 124-25.

A New Jersey appellate court later concluded that *Galligan* should be "read broadly . . . in light of New Jersey's frequent reference to equitable principles to relieve the harshness of statutes of limitations." *Mitzner v. W. Ridgelawn Cemetery, Inc.*, 709 A.2d 825, 827 (N.J. Super. Ct. App. Div. 1998). The court in *Mitzner* allowed equitable tolling where a plaintiff first sued in a forum that lacked personal jurisdiction over the defendant, and then refiled the same claim in New Jersey state court approximately one month after the first case was dismissed and six months after the statute of limitations expired. *Id.* at 827-29. The Third Circuit, citing "the numerous cases in which New Jersey courts have flexibly applied the New Jersey statute of limitations in order to avoid barring litigants on procedural grounds," likewise predicted that the state supreme court would apply *Galligan* and allow tolling where a first action was filed in a forum that lacked personal jurisdiction. *Jaworowski v. Ciasulli*, 490 F.3d 331, 335 (3d Cir. 2007).

-11-

The district court acknowledged *Galligan* but thought equitable tolling was unavailable here, because the Zarecors failed to file suit at all, choosing instead to pursue arbitration. That is a reasonable distinction that would be persuasive in some jurisdictions, but our best evidence of New Jersey law is that a diligent pursuit of a claim in arbitration also tolls the statute of limitations. In *Schwartz v. Travelers of New Jersey Insurance Co.*, 2009 WL 1405861 (N.J. Super. Ct. App. Div. May 21, 2009), a New Jersey appellate court, considering an insured's claim against an insurer for uninsured motorist benefits, agreed with a trial judge that a "demand for arbitration—even if inconsistent with the type of arbitration required by the policy—was sufficient to toll the statute of limitations." *Id*. at *2. The court in *Schwartz* ultimately held that the action was untimely, because the plaintiff waited nearly six years after the defendant refused to arbitrate before suing, *id.* at *3, but it is significant that both the trial court and the intermediate appellate court concluded that a demand for arbitration tolled the statute of limitations. Given the breadth of *Galligan* and the broad reading given to that decision by other New Jersey courts, our best prediction of New Jersey law is that the Zarecors' timely and diligent pursuit of their claim in arbitration was sufficient to toll the statute of limitations. That a federal court later concluded that the arbitration panel lacked jurisdiction does not preclude equitable tolling under the reasoning of *Galligan*.

The Zarecors brought this action one week after the district court denied their motion to reconsider its decision vacating the arbitral award in their favor. Accepting that the statute of limitations was tolled from the filing of the claim in arbitration on July 27, 2009, until the district court's final ruling on November 10, 2011, the claim based on New Jersey law was timely filed on November 17, 2011. We need not address whether the 2007 class action also tolled the statute of limitations under New Jersey law. *See Staub v. Eastman Kodak Co.*, 726 A.2d 955, 963-67 (N.J. Super. Ct. App. Div. 1999).

-12-

C.

For the Arkansas securities fraud claim under Ark. Code § 23-42-106(c) (1999), the time limit is established by the statute then in effect, Ark. Code § 23-42-106(f) (1999): "No person may sue" under the statute "after three (3) years from the effective date of the contract of sale." The effective date of the Zarecors' contract of sale for securities was no later than the end of 2007. Although the Zarecors did not allege when they purchased the securities, they aver that the collapse of the RMK Funds caused their losses in 2007, and they could not have purchased the securities after that date. The three-year time limit under Arkansas law thus concluded no later than the end of 2010. The Zarecors brought their claim in November 2011, and it is therefore untimely.

The Zarecors contend that the Arkansas claim was timely filed because a "discovery rule" tolled the running of the three-year period until they "could have discovered the fraud." The time limit for the Arkansas claim, however, runs from "the effective date of the contract of sale," not from a later date when fraud could have been discovered. The authority cited by the Zarecors, *Vanderboom v. Sexton*, 422 F.2d 1233, 1240 (8th Cir. 1970), applied federal law rather than Arkansas law to determine when the statute began to run, so it is inapplicable here.

We see no basis in the Arkansas statute for applying a discovery rule. The Arkansas Supreme Court, interpreting a prior version of Ark. Code § 23-42-106(f) (1999) that said "[n]o person may sue . . . more than two (2) years after the contract of sale," held that the two-year limit could not "be extended by fraudulent concealment of an untrue statement to such time as the untruth of the statement is discovered," because the words of the statute plainly foreclosed such an exception to the time limit. *Martin v. Pac. Ins. Co.*, 431 S.W.2d 239, 240 (Ark. 1968). The statute was temporarily changed to incorporate a discovery rule that started the time limit "when the person in exercise of reasonable care could have discovered the alleged

-13-

violation," 1971 Ark. Acts 326, but the legislature then reverted to a statute like the one at issue in *Martin*. The version applicable here, Ark. Code § 23-42-106(f) (1999), provides that "[n]o person may sue" more than a fixed number of years after the contract of sale. We therefore conclude that Arkansas courts would not interpret the statute to allow for tolling by a discovery rule.

The Zarecors also argue that their pursuit of the arbitration with FINRA tolled the Arkansas time limit. They cite no authority from Arkansas, however, to suggest that an arbitration could toll the limit of Ark. Code § 23-42-106(f) (1999). As with the federal claim, we conclude that Arkansas law does not provide for tolling based on the pursuit of an arbitration.

The Zarecors assert that their claim was nonetheless timely filed because the 2007 class action tolled the three-year limit. The Arkansas Supreme Court has applied *American Pipe* tolling to a prior version of Ark. Code § 23-42-106(f), *see Blaylock v. Shearson Lehman Bros.*, 954 S.W.2d 939, 941 (Ark. 1997), so we will presume that the doctrine is available to the Zarecors here. But given that "[t]he tolling rule of *American Pipe* is a generous one, inviting abuse," *Crown, Cork & Seal Co.*, 462 U.S. at 354 (Powell, J., concurring), we are not prepared based on the authorities available to predict that Arkansas would broaden *American Pipe* to toll the time limits for state-law claims that were not pleaded in the 2007 class action. We therefore conclude that the district court properly dismissed the Arkansas claim as untimely.

IV.

The Zarecors contend that the district court abused its discretion by denying their post-judgment motion for leave to amend their complaint a second time. We have concluded, however, that judgment should not have been entered for the defendants on the claim under New Jersey law, so the motion for leave to amend

-14-

should not have been treated as a "disfavored" post-judgment motion. *See United States ex rel. Roop v. Hypoguard USA, Inc.*, 559 F.3d 818, 824 (8th Cir. 2009). Considerations of undue delay are still relevant to whether leave should be granted under Federal Rule of Civil Procedure 15(a)(2) while a case is pending, *see Hammer v. City of Osage Beach*, 318 F.3d 832, 844-45 (8th Cir. 2003), but the district court did not address the motion in that context. We therefore reverse the order denying leave to amend and remand for the court to consider the motion anew in light of our disposition concerning the statutes of limitations.

*       *       *

For these reasons, the judgment of the district court is affirmed in part and reversed in part, and the case is remanded for further proceedings.

_____