**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-3106
_____

RICHARD H. MCCULLOUGH; HOLLY A. MCCULLOUGH

v.

ADVEST, INC.; MERRILL LYNCH, PIERCE FENNER & SMITH INCOPORATED;
BANK OF AMERICA, N.A., as successor in interest to Merrill Lynch Pierce, Fenner &
Smith Incorporated and Advest Incorporated; ROBERT FELDMAN

Richard H. McCullough,

Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:17-cv-00407)
District Judge: Honorable Cathy Bissoon
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
May 25, 2018

Before: GREENAWAY, JR., BIBAS, and ROTH, <u>Circuit</u> <u>Judges</u>

(Opinion filed November 5, 2018)
_____

OPINION[*]
_____

PER CURIAM

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Richard H. McCullough appeals pro se from the District Court's order granting the defendants' motion to dismiss his complaint on statute of limitations grounds. We will affirm.

The parties are familiar with the facts, so we will only briefly recount them here. Between March 2005 and December 2007, Richard and Holly McCullough purchased shares of two "penny stocks," Telkonet, Inc. (TKOI) and Geo Global Resources, Inc. (GGR), based on what they alleged were false representations made by Robert Feldman, who held himself out as being employed by Merrill Lynch. On February 4, 2011, the McCulloughs filed a praecipe for writ of summons in the Court of Common Pleas of Allegheny County. Thereafter, the McCulloughs served the writ on the named defendants: Feldman, Merrill Lynch, Advest, Inc., and Bank of America. Six years later, the McCulloughs filed their complaint in state court, alleging that the defendants failed to comply with the federal Securities and Exchange Act and violated various state laws. The defendants removed the case to federal court based on federal question jurisdiction. See 28 U.S.C. § 1441. After the McCulloughs filed an amended complaint, the defendants filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), arguing, inter alia, that the McCulloughs filed their federal claim beyond the applicable limitations period. The District Court granted that motion, holding that the federal claim was time-barred. The District Court also declined to exercise supplemental jurisdiction over the state law claims. Only Richard McCullough appealed.

2

We have jurisdiction under 28 U.S.C. § 1291, and exercise plenary review over the District Court's decision to grant a motion to dismiss on statute of limitations grounds. See Algrant v. Evergreen Valley Nurseries Ltd. P'ship, 126 F.3d 178, 181 (3d Cir. 1997). We review a District Court's refusal to exercise supplemental jurisdiction for abuse of discretion. See Figueroa v. Buccaneer Hotel Inc., 188 F.3d 172, 175 (3d Cir.1999). Generally, "to the extent that [a] court considers evidence beyond the complaint in deciding a 12(b)(6) motion, it is converted to a motion for summary [judgment]." Anjelino v. N.Y. Times Co., 200 F.3d 73, 88 (3d Cir. 1999). But "[w]e can take judicial notice of … stock prices even on a motion to dismiss because these facts are not subject to reasonable dispute [and are] capable of accurate and ready determination by resort to a source whose accuracy cannot be reasonably questioned." In re Merck & Co., Inc. Sec. Litig., 432 F.3d 261, 264 n.3 (3d Cir. 2005). In addition, we may consider "the *fact* that … regulatory filings contained certain information, without regard to the truth of their contents …." Staehr v. Hartford Fin. Servs. Group, Inc., 547 F.3d 406, 425 (2d Cir. 2008).

The McCulloughs brought their federal securities fraud claim under Section 10(b) of the Securities and Exchange Act, 15 U.S.C. § 78j(b), and under Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5. Those provisions are subject to the limitations periods in 28 U.S.C. § 1658(b), which provides that an action must be filed "not later than the earlier of (1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." See Merck & Co., Inc. v. Reynolds,

3

559 U.S. 633, 638 (2010). The two-year period under § 1658(b)(1) "begins to run once the plaintiff did discover or a reasonably diligent plaintiff would have 'discover[ed] the facts constituting the violation'—whichever comes first."[1] Id. at 653. Notably, "the limitations period commences not when a reasonable investor would have begun investigating, but when such a reasonable investor conducting such a timely investigation would have uncovered the facts constituting a violation." City of Pontiac Gen. Employees' Ret. Sys. v. MBIA, Inc., 637 F.3d 169, 174 (2d Cir. 2011). The "'facts constituting the violation' include the fact of scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'" Merck, 559 U.S. at 637.

Here, the critical date for timeliness purposes is February 4, 2009—two years before the McCulloughs initiated the action in state court. According to the McCulloughs' complaint, Feldman, in an effort to increase his personal compensation, knowingly made numerous misrepresentations between March 2005 and December 2007 that induced them to buy stock in TKOI and GGR. For instance, Feldman claimed that he had a business relationship with TKOI's CEO, that TKOI had entered into various

---

[1] By contrast, the 5-year period in § 1658(b)(2) acts as a statute of repose and cannot be tolled based on when the violation occurred or should have been discovered. See Dusek v. JPMorgan Chase & Co., 832 F.3d 1243, 1246-47 (11th Cir. 2016). The District Court rejected the defendants' argument that the McCulloughs' claim was barred by § 1658(b)(2)'s statute of repose, noting that they commenced the action within five years of the last alleged misrepresentation by Feldman. See In re Exxon Mobil Corp. Sec. Litig., 500 F.3d 189, 200 (3d Cir. 2007) (holding "that the repose period applicable to § 10(b) claims as set out in … 1658(b)(2) begins to run on the date of the alleged misrepresentation."). We need not address this issue because, as explained below, the McCulloughs' claims are barred by the statute of limitations in § 1658(b)(1).

4

contracts with the United States government and with General Electric, that TKOI had a backlog of orders, and that the company would become worth $60 to $80 million with its stock reaching $100 per share. When the McCulloughs told Feldman that they intended to sell their TKOI stock in May 2007, Feldman asserted that he personally owned one million shares and encouraged the McCulloughs to buy more TKOI stock because he essentially controlled all shares. Later, however, Feldman told the McCulloughs that investors not under his control were selling shares of TKOI. Feldman also asserted that he had a close friend who worked in the office of GGR's CEO, that GGR had "the largest discovery of oil and natural gas ever in the Indian Ocean," and that GGR had "enormous contracts with the Indian Government." Although Feldman told the McCulloughs that the government contracts would be announced on particular dates, those announcements were never made.

As Feldman repeated these representations to the McCulloughs, the companies' stock prices fell. In particular, when the McCulloughs made their first purchase of TKOI on March 17, 2005, the stock was worth $4.31 per share. When they made their final purchase on December 31, 2007, the price had fallen to $0.80, a decline of over 81%. On February 4, 2009, a share of TKOI was worth $0.16. GGR's share price dropped over 68% from the time of the McCulloughs' first purchase on January 9, 2006, when it was worth $10.14 per share, to their final purchase on November 27, 2007, when a share was worth $3.17. On February 4, 2009, the stock closed at $1.16 per share. In addition to the drop in value of the companies' stock, Securities and Exchange Commission filings by

the companies indicated that, as of the end of 2007, TKOI had incurred substantial net losses, and that GGR had not earned any revenue from oil and natural gas exploration, its primary business.

We conclude that, under these circumstances, a reasonably diligent investor would be led to discover facts constituting a violation of § 10(b), including Feldman's intent to defraud, before February 4, 2009. Although the limitations period does not automatically begin to run when a plaintiff is merely put on "inquiry notice" or when there are "storm warnings," those terms "may be useful to the extent that they identify a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating." Merck, 559 U.S. at 653. Here, the McCulloughs did not dispute that the significant drop in stock value and the SEC filings put them on inquiry notice. See Zarecor v. Morgan Keegan & Co., Inc., 801 F.3d 882, 887 (8th Cir. 2015) (stating that by the time the plaintiffs had lost most of their investment, a reasonably diligent plaintiff would have begun investigating the decline in value).

Instead, the McCulloughs alleged that they did not discover Feldman's deceptive acts and facts showing scienter until 2010, when they communicated with TKOI's CEO and GGR's management.[2] But a reasonably diligent plaintiff conducting a timely investigation would have uncovered a strong inference of Feldman's intent to deceive

---

[2] TKOI's CEO informed the McCulloughs that the company had no government contracts, did not have a backlog of orders, and never had a business relationship with Feldman. Management at GGR told the McCulloughs that it had no contracts with the Indian government to drill for oil.

6

well before February 2009.  See OFI Asset Mgmt. v. Cooper Tire & Rubber, 834 F.3d 481, 490 (3d Cir. 2016) ("Only a complaint that provides sufficiently particularized factual pleading and gives rise to a strong inference of scienter can survive a motion to dismiss."); MBIA, 637 F.3d at 175 ("The fact that Merck specifically referenced pleading requirements when discussing the limitations trigger indicates to us that the Merck Court thought about the requirements for 'discovering' a fact in terms of what was required to adequately plead that fact and survive a motion to dismiss.").  Several factors support this conclusion.

First, fraud is more likely to be discovered promptly when, as here, the available facts concern a single individual's representations about specific stocks.  See Pension Tr. Fund for Operating Engr's v. Mortg. Asset Securitization Transactions, Inc., 730 F.3d 263, 275-76 (3d Cir. 2013) ("if the information is generalized,—i.e., does not refer to a specific security or defendant—then there will typically be a larger temporal disparity between the start of the investigation and the discovery of the facts constituting the violation.  But if the information is particularized,—i.e., does refer[] to a specific security or defendant—then there will usually be a smaller temporal disparity between the start of the investigation and the discovery of the facts constituting the violation.").  Furthermore, Feldman's misrepresentations were readily confirmed by speaking with representatives of TKOI and GGR, and there is no indication that a "comparable investigation would [not] have been equally successful" if conducted earlier.  Id. at 279.  In addition, the McCulloughs' allegation that Feldman stood to benefit financially from the alleged fraud

7

"weigh[s] heavily in favor of a scienter inference[.]" Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 325 (2007). Finally, Feldman's intent to deceive was further established by the disparity between his continually positive assessment of the companies, coupled with his suggestion that he had special access to information about them, and the companies' falling stock prices and their SEC filings. See Novak v. Kasaks, 216 F.3d 300, 311 (2d Cir. 2000) (stating that a plaintiff pleads a strong inference of scienter when a complaint sufficiently alleges that the defendants, inter alia, "knew facts or had access to information suggesting that their public statements were not accurate").

Under these circumstances, we conclude that, more than two years before February 2009, a reasonably diligent plaintiff would have discovered the elements giving rise to a securities fraud claim. Accordingly, the District Court properly dismissed the McCulloughs' securities fraud claims as time-barred. And because it dismissed the claims over which it had original jurisdiction, the District Court did not abuse its discretion in declining to exercise supplemental jurisdiction over the McCulloughs' state law claims. See 28 U.S.C. § 1367(c)(3); Maio v. Aetna, Inc., 221 F.3d 472, 480 n.6 (3d Cir. 2000).